(No. 27457.—

MARY HEINEMAN, Appellant, *vs.* ANNA HERMANN *et al.*— (V. PHELAN, Appellee.)

*Opinion filed Nov. 19, 1943—Rehearing denied Jan. 17, 1944.*

DuHADWAY & SUDDES, (G. R. SCHWARZ, of counsel,) all of Jerseyville, for appellant.

JACOBY, PATTON, MANNS & COPPINGER, (JOHN F. McGINNIS, of counsel,) all of Alton, for appellee.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Madison county. Appellant, Mary Heineman, filed the complaint for partition of certain property located in Madison county.

It was alleged in the complaint that Julius Heineman was the owner of the property at the date of his death, which occurred on November 4, 1937; that he left surviving, as his only heirs, appellant, Mary Heineman, his widow, two brothers and a nephew. There is no controversy in the record as to the heirship. It was further alleged in the complaint, that upon the death of Julius

Heineman, Mary Heineman, his wife, inherited a one-half interest in the property, in fee; that she had a dower interest in the other one-half, which descended to the brothers and nephew, subject to the dower rights of the widow. It was further alleged that on May 5, 1929, appellee, Anna Hermann, acquired title to the interests in said property which descended to the heirs of Julius Heineman other than his widow. It was then alleged that by virtue of the death of Julius Heineman and the execution of the deed to Anna Hermann, appellant, Mary Heineman owned a one-half interest in the property, in fee, and a dower interest in the remaining one-half; that Anna Hermann was the owner of said remaining one-half, in fee, subject to the dower interest in Mary Heineman. It was further alleged in the complaint, that appellee, V. Phelan, was in possession of the premises as a tenant.

To the complaint, Phelan filed an answer and counterclaim. By his counterclaim, he alleged that in September, 1929, he purchased the real estate described in the complaint from one Worcester, and paid cash therefor; that he directed that the property be deeded to Julius Heineman, which was done; that since that date he had advanced all money necessary for the payment of taxes and had made improvements thereon.

The prayer of the counterclaim was that the court decree that said real estate was impressed with a resulting trust in favor of counterclaimant; that the title thereto was held in trust by the heirs of Julius Heineman for him, and that Mary Heineman and Anna Hermann be ordered to execute a deed conveying said property to him. An answer was filed to this counterclaim by Mary Heineman, denying its material allegations.

The only issue made by the pleadings in the case was as to the ownership of the property under Phelan's counterclaim. Formal proofs were made sustaining the allegations of the complaint as to the conveyance of the property

to Julius Heineman, his death, heirship and the deed to Anna Hermann. To sustain his counterclaim, Phelan offered in evidence before the master his own deposition. The master sustained an objection to Phelan's competency as a witness. The ruling of the master was sustained by the court.

At the hearing before the master, Winifred Phelan was called, by Phelan, as a witness in support of his counterclaim. The question of her competency as a witness was raised by appropriate and timely objections. Her competency is important in this case for the reason that there is no other competent evidence in the record concerning the transaction between her former husband and Julius Heineman. It developed from a *voir dire* examination that the witness was the former wife of Phelan; that she divorced Phelan on September 14, 1939. The divorce decree was offered in evidence, from which it appeared that the divorce was granted for the fault of the husband. It did not, therefore, bar her dower rights in any property owned by him. Ill. Rev. Stat. 1939, chap. 41, par. 14.

The objections as to her competency as a witness were overruled by the master. This ruling was sustained by the court. The court overruled exceptions to the master's report and entered a decree sustaining the counterclaim and confirming title to the property in Phelan. Mary Heineman was ordered to deliver to Phelan the abstract of title to the property. From this decree, Mary Heineman perfected this appeal.

The first objection to the competency of the divorced wife, as a witness, is based on the claim that she was interested in the result of the suit, because she had an inchoate right of dower in any property owned by her former husband, which was not affected by the divorce decree. Whatever may have been the effect of the divorce decree on her right of dower in any propery owned by her husband, an inchoate right of dower is not sufficient to give

her an interest in the result of the suit. In the case of *Pyle* v. *Pyle*, 158 Ill. 289, this court considered the competency of a witness based upon the fact that he had an inchoate right of dower in the subject matter of the suit. It was there said, "If the only objection to his competency had been his interest in such result, then, since his interest by way of an inchoate right of dower was uncertain, remote and contingent, and not a present, certain and vested interest, it would seem that such objection would not have been well taken, either at common law or under the statute." Under this rule, the fact that Winifred Phelan might have had an inchoate right of dower in the property, if the title was found to be in her former husband, would not give her such an interest in the result of the suit as to render her incompetent.

The most serious objection to her competency arises out of the fact that she was testifying for her former husband, who was clearly an incompetent witness. He was a party to the suit, prosecuted by an heir-at-law of Julius Heineman. He was directly interested in the result of the suit. This court has held in many cases that where a husband is disqualified by reason of interest, his wife is also incompetent. (*Peters* v. *Peters*, 376 Ill. 237; *Gillam* v. *Wright*, 246 Ill. 398; *Heintz* v. *Dennis*, 216 Ill. 487; *Treleaven* v. *Dixon*, 119 Ill. 548; *Crane* v. *Crane*, 81 Ill. 165.) It is further held that such incompetency continues after the marriage relation is dissolved, either by death or divorce. (*Zimmer* v. *Zimmer*, 298 Ill. 586; *Monaghan* v. *Green*, 265 Ill. 233; *Wickes* v. *Walden*, 228 Ill. 56; *Geer* v. *Goudy*, 174 Ill. 514.) This was undoubtedly the rule at common law and under the Evidence Act prior to the amendment of 1935 to section 5. (Ill. Rev. Stat. 1943, chap. 51, par. 5.) The purpose of the amendment was to enable husband and wife to testify for or against each other in certain cases designated in the amendment as "all civil actions." This amendment does not purport to change

any other provision of the Evidence Act. It does not purport to change the law with reference to the disqualification of a party interested in the result of the suit where the other party sues or defends as heir.

We approve the language of the Appellate Court for the First District in *In Re Estate of Teehan*, 287 Ill. App. 58, construing section 5 of the Evidence Act, as amended in 1935. It was there said: "It will be noticed the amendment inserted this section as a part of the statute approved March 21, 1872, as amended. It is inserted as a part of that statute and must therefore be construed with reference to these other particular sections of the Act, and the Act as a whole, and as amended. The Act does not specifically purport to change in any way the provisions of Section 2, or of any section other than Section 5. A long line of cases construing sections 1 and 2 as the same were and now are, held that not only husbands and wives, but other persons interested directly were incompetent to testify against the estate of a deceased person. We must presume the Legislature knew the law as thus declared * * *. The law does not favor repeal by implication, and section 13 of article IV of the Constitution * * * contains several provisions, the evident purpose of which is to prevent any such repeal except under circumstances where the effect thereof will be clearly and fully understood. To that end is the provision that no Act may embrace more than one subject and that this subject shall be expressed in the title of the Act, and that no law shall be revived or amended by reference to its title only, but that the law revived or the section amended shall be inserted at length in the new Act * * *. This statute is plainly by inference limited to cases purely civil in their nature. Criminal cases are by inference excluded from its scope. The language of the statute also shows a further limitation in that it is made applicable alone to witnesses between

whom the marital relationship exists or has existed. Indeed, its main purpose seems to be to define the communications which are and which are not privileged where the marriage relationship exists or has existed. It does not purport to cover the far larger class of witnesses, of which those between whom the relationship of husband wife exists are only a part. The law applicable to the larger class is stated in sections 1 and 2 of the statute. Was it the legislative intention to make competent an interested husband or wife while other interested persons are rendered incompetent and disqualified to testify? The language would seem broad enough to permit of such a construction if it were not evident from the whole statute that the Legislature did not intend such discrimination. When we read the several sections of the Act together as amended, it would seem that the question of the competency of interested witnesses to testify as against one defending as executor, etc., was not in the mind of the Legislature, was not considered by it, therefore that there could not have been any intention to change the long settled policy of this State with reference to such testimony. We are disposed to hold that the phrase 'in all civil actions,' as used in the first clause of the sentence which composes the paragraph, must be limited by excepting therefrom actions where the party sues or defends as executor, etc. When so construed the several sections harmonize with each other, and thus construed will express what was the evident intention of the Legislature. Notwithstanding the amendment of section 5, we hold that the wife of the claimant in this case was incompetent to testify, and that the admission of her testimony was error, which would alone compel a reversal of the judgment."

At common law, neither the husband nor the wife could testify as to any fact or transaction, the knowledge of which was obtained by means of the marriage relation.

The common law is the law of this State, except insofar as it has been modified by statute. At common law, a husband could not be a witness for or against his wife as to any matter, nor could he, either during the marriage or after its termination by death or divorce, be called as a witness to testify to any fact or transaction, the knowledge of which was obtained by means of the marriage relation. The same rule applies to the wife. (*People* v. *Rogers,* 348 Ill. 322; *People* v. *Ernst,* 306 Ill. 452; *Zimmer* v. *Zimmer,* 298 Ill. 586; *Schreffler* v. *Chase,* 245 Ill. 395.) It was not the purpose of the 1935 amendment of section 5 of the Evidence Act to change this rule as to the competency of witnesses in cases where the suit was brought or defended by an heir, etc., of a deceased person, nor was it the intention of that amendment to change the rule announced in the decisions of this court, construing section 2 of the Evidence Act.

The testimony of the divorced wife of Phelan concerned a transaction which occurred during coverture. The facts concerning which she testified came to her knowledge by reason of the marriage relation. The rule of the common law was not changed by either section 2 or section 5, as amended in 1935. The decisions of this court concerning the competency of witnesses in the cases construing section 2 are controlling. The rule announced in those cases was not modified or changed by amended section 5, because that section deals only with the subject matter to which it specifically refers. Under this rule Winifred Phelan was clearly incompetent to testify to the matters to which she referred. Moreover, a careful examination of her testimony, even had she been a competent witness, convinces us that it was wholly insufficient to establish a resulting trust as alleged in the counterclaim.

With the testimony of the divorced wife eliminated from the record the other testimony tending to support the

counterclaim is, in our opinion, wholly insufficient. The burden of proof is upon the party seeking to establish a resulting trust. The evidence must be clear, strong, unequivocal and unmistakable. It must establish the fact of payment by the claimed beneficiary beyond a doubt. (*Curielli* v. *Curielli,* 383 Ill. 102.) This rule has been announced and followed in many other decisions of this court. The evidence in this record does not establish facts from which a resulting trust would arise by that degree of proof required by the above rule.

The plaintiff alleged in the complaint that she had advanced, for the payment of taxes on the premises, since the death of her husband, the total sum of $50.55. She asked for an accounting against the defendants for the money so expended. She also asked for an accounting for an item of $10.50 paid by her for an extension of the abstract of title. Inasmuch as these were expenditures for the benefit of all the owners of the property, she was entitled to an accounting against appellee Anna Hermann. Neither the complaint nor the counterclaim asked for any other accounting, and no further accounting is involved under the pleadings.

The decree is reversed and the cause is remanded to the circuit court of Madison county, with directions to enter a decree for partition between the plaintiff and Anna Hermann, in accordance with their interests, as set forth in the complaint. The decree should also require Anna Hermann to pay to the plaintiff her proportionate share of the above items advanced by the plaintiff, based upon her interest in the property. By the decree, the counterclaim will be dismissed for want of equity.

*Reversed and remanded, with directions.*