Elizabeth K. Moyer, Appellant, v. John Hancock
Mutual Life Insurance Co., Appellee.

Gen. No. 46,439.

First District, Third Division.
April 20, 1955.
Released for publication May 12, 1955.

Sperling & Neiman, of Chicago, for appellant; Jack I. Sperling, and Leroy J. Neiman, both of Chicago, of counsel.

 
 

Eckert, Peterson & Lowry, of Chicago, for appellee; Owen Rall, and William A. Cannon, both of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Plaintiff, the named beneficiary in a life insurance policy issued by the defendant upon the life of Carlisle E. Moyer, her husband, brought an action against the defendant for $30,000, that being the face amount of the policy. A jury trial resulted in a verdict in favor of the defendant and judgment was entered accordingly. Plaintiff's motions for a judgment notwithstanding the verdict and for a new trial were denied. Plaintiff appeals.

The evidence, briefly outlined, was as follows: December 23, 1947 Carlisle Moyer applied for life insurance in the sum of $30,000. January 13, 1948 a policy was issued to Moyer who was then 34 years of age. He died on November 17, 1949. Two annual premiums had been paid prior to his death. The application for insurance, consisting of three parts designated as parts A, B, and C, is attached to the policy. The pertinent parts are as follows:

Question 12 of part B reads: "Have you ever had any X-ray, electro-cardiagraphic or blood examinations or studies?"
Answer: "No."

Question 13 of part B reads: "Have you, during the past five years, consulted any physician or other practitioner or been confined to or treated in any hospital, sanitorium, dispensary, clinic, or similar institution not stated in answers to questions 11 and 12?"
Answer: "No."

Dr. Martin Brann had examined the insured, Moyer, on ten different occasions during the period from May

3

■

25, 1945 to and including June 26, 1945. Nine of these examinations of Moyer were made at the office of Dr. Brann. May 28, 1945 Dr. Brann took a cardiogram of Moyer which revealed evidence of coronary artery disease and at that time Dr. Brann made a notation on his progress report of "coronary insufficiency." June 14, 1945, Dr. Brann took another cardiogram which appeared to be normal. The meaning of both cardiograms was explained by Dr. Brann to Moyer. At the request of Dr. Brann, Moyer went to the offices of one Dr. Kopstein on May 31, 1945, where an X-ray was taken of his chest, stomach and heart. This X-ray was interpreted as normal. In July 1945, Moyer, accompanied by the plaintiff, was examined at the office of Dr. Hendrickson. At that time Moyer received a prescription for a skin ailment and stomach disorder. Subsequently, on November 17, 1949, Dr. Hendrickson was summoned to attend Moyer during his last illness shortly before he died. After Moyer died Dr. Hendrickson signed a death certificate.

Plaintiff contends that the court erred in permitting the death certificate in evidence, on the ground that it tended to prejudice the jury. The insurance policy provided for payment upon proof of the insured's death. In making her claim for the proceeds of the policy, plaintiff submitted defendant's exhibits 1, 2 and 3. Exhibit 1, signed by plaintiff, states that the death of the insured was caused by a coronary occlusion. Exhibit number 2 is signed by Dr. Hendrickson. This exhibit states the same cause of death as exhibit number 1. Exhibit number 3 is a certified copy of the certificate of death, signed by Dr. Hendrickson, which states that the coronary occlusion resulting in the death of the insured was of forty-five minutes' duration.

■ The record shows that plaintiff's counsel objected only to the certificate of death, defendant's exhibit number 3. Since defendant's exhibits 1 and 2

4

were received without objection and each of the three exhibits states the same cause of death, we do not think the plaintiff was prejudiced by the admission of exhibit number 3.

Plaintiff next contends that the court erred in permitting a medical director of the defendant to testify with respect to its practice in rejection of applications for insurance where cardiograms taken previous to the application show coronary artery disease.

Dr. Benjamin L. Huntington, an associate medical director of the defendant company, testified that it was his duty to pass on questions of insurance risks; that such applications are called either to the attention of himself or associates; that he was familiar with the practice of insurance companies generally in acceptance and rejection of risks; and that coronary artery disease is considered serious and that a person suffering from it is not in good health. He further testified that where there was evidence from a cardiogram that an applicant had coronary artery disease it was the practice of insurance companies generally to refuse the issuance of insurance; and that it is essential in connection with the evaluation of a risk that information regarding the taking of previous cardiograms be stated on the application. A cardiogram of the insured taken on May 28, 1945 was interpreted by this witness on the trial as indicative of coronary artery disease.

In support of her position plaintiff cites Luke Grain Co. v. Illinois Bankers Life Ass'n, 263 Ill. App. 576. In that case the defendant's medical expert offered testimony as to what he would have done had he known certain facts as subsequently disclosed. In the present case Dr. Huntington testified with respect to the practice of insurance companies generally in the acceptance and rejection of risks. This evidence was competent and the case last cited so holds. To the same effect see Traders' Ins. Co. v. Catlin, 163 Ill. 256.

5

■ Plaintiff insists that the defendant failed to maintain its affirmative defense and that the verdict of the jury is manifestly against the weight of the evidence. In the recent case of La Penta v. Mutual Trust Life Ins. Co., 4 Ill.App.2d 60, also involving an action by the beneficiary in a life insurance policy, this court said at page 65 in adverting to Mid-States Ins. Co. v. Brandon, 340 Ill. App. 470, that "the question of whether or not misrepresentations are material is ordinarily a question of fact for the court, unless they are of such a nature that all persons would agree that they are or are not material." (Citing Hancock v. National Council Knights & Ladies of Security, 303 Ill. 66.)

■ In the instant case we think the evidence was ample to support a finding that the representations made by insured, Moyer, were material and that they were made with intent to deceive the defendant.

In support of her motion for a new trial on the ground of newly discovered evidence, plaintiff filed an affidavit of one Charles T. Rothermel, Jr., vice president and director of Moore, Case, Lyman & Hubbard, Inc., and the general agent of the defendant company. Rothermel's affidavit stated in substance that he was the person who obtained the application for insurance from the insured whom he had known since 1941; that over a period of six to eight months he was successful in selling the policy here in question to the insured; that the insured "had the attitude he would live forever"; that the insured was an "extremely robust and vigorous young man"; that the insured told the affiant, "I am in perfect shape and there is nothing wrong with me"; that the affiant asked the insured if he had been to a doctor in the past several years for anything of importance and that the insured replied, "Oh, I had a slight stomach upset some years ago and went to a doctor, but it did not mean anything."

■■ Defendant's counsel filed a counteraffidavit stating that Rothermel was present in the courtroom

6

at the trial; that Rothermel spoke to plaintiff in the courtroom and in the corridor during intermission; and that Rothermel was available as a witness and could either have been subpoenaed or requested by plaintiff to testify on her behalf. It does not appear that plaintiff could not have obtained Rothermel's testimony by the exercise of due diligence. Moreover, to warrant granting a new trial, newly discovered evidence must be of a conclusive character, material to the issues, and related to the merits of the case. See Graham v. Hagmann, 270 Ill. 252; Davis v. Theatre Amusement Co., 351 Ill. App. 517. In view of the undisputed facts in the case at bar, we do not think that the testimony of Rothermel as stated in his affidavit would have been of a conclusive character or material to the issues.

Finally, plaintiff urges that the verdict of the jury was arrived at illegally as the result of a compromise agreement had before the final ballot. Plaintiff's attorneys made an affidavit that they had contacted the foreman of the jury as well as other jurors who had rendered the verdict, and that from their investigation the jury had arrived at its verdict illegally. The law is well established that the affidavits of jurors cannot be received for the purpose of setting aside their verdict. (Ruiter v. Knudson, 318 Ill. App. 211.)

For the reasons given, the judgment is affirmed.

Judgment affirmed.

KILEY, P. J. and FEINBERG, J., concur.