**People of the State of Illinois, Plaintiff-Appellee,
v. Richard Davis, Defendant-Appellant.**

**Gen. No. 50,502.**

First District, First Division.

July 25, 1966.

John H. Bitner, of Chicago (Bell, Boyd, Lloyd, Haddad & Burns, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Carmen V. Speranza, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Richard Davis, was found guilty of armed robbery after a bench trial, and sentenced to a term in the penitentiary of not less than four nor more than twelve years. On appeal, he contends: (1) that the indictment was constitutionally defective; (2) that the court committed reversible error in denying his petition for a bill of particulars; (3) that the State failed to prove beyond a reasonable doubt that he was sane at the time of the alleged acts; (4) that the court was in error in ordering stricken a defense witness' answer to a hypothetical question; and (5) the court erroneously permitted three witnesses to testify a second time in rebuttal over the objection that the rule of exclusion had been invoked and the witnesses had remained in the courtroom after testifying the first time.

The record reveals that at about 3:30 p. m. on December 26, 1962, the defendant entered a clothing store at 63rd Street and Ellis Avenue in Chicago. After spending about forty-five minutes selecting many garments, he gave the proprietor, Max Gillman, a deposit of $30 and told Gillman he would return the following Friday to pick up the merchandise. Defendant then pulled a pistol from his coat pocket, announcing, "This is a stick-up," and instructed Gillman to wrap the package containing the clothing he had selected. He then took over $100 in cash from Gillman, which included the $30 deposit he had just paid, and instructed Gillman, another clerk, and a customer to go to the back of the store. After ripping two telephones from the wall, defendant left the store and hailed a taxi. As Gillman watched from the sidewalk in front of the store, defendant rode in the taxi for about two blocks, and then entered a hotel. Gillman called the police from a neighboring store, and about fifteen minutes later accompanied two officers to the hotel. Gillman saw the defendant in the third-floor hallway, and identified him. The officers recovered a pistol and over $100 in currency from the defendant's pockets, and when Gillman asked him, "Where is the merchandise?" the defendant pointed to a closet, where the police found a package containing the clothing taken from the store. A police officer testified that, when Gillman saw the defendant at the police station later that day, defendant said, "All of [the money taken from defendant's pocket] didn't belong to Mr. Gillman. Some of that money is mine. I had it before I went into the store." Gillman also testified as to this statement by the defendant. From the money taken from the defendant, the police turned over to Gillman the $95 claimed by him, and returned the balance to the defendant.

Defendant was indicted for this offense on January 9, 1963, and the Public Defender was appointed to repre-

sent him. Upon motion, he was examined in the Behavior Clinic of the Criminal Court of Cook County. The result of this examination, performed by Dr. William H. Haines, was a diagnosis of, "suspected schizophrenic reaction," and on January 30, 1963, a sanity hearing jury found the defendant at that time to be insane. He was thereupon committed to the Illinois Security Hospital at Chester, where he remained until he was released pursuant to his petition about January 1, 1964. The indictment was reinstated on January 17, 1964, and on February 6, 1964, a sanity hearing jury found the defendant, "competent." After a series of continuances, defendant filed a petition in September of 1964 for a bill of particulars and for an order appointing a private psychiatrist to examine him at the State's expense. The petition was denied; and in February of 1965 the defendant was tried and convicted.

Defendant first contends that the indictment was constitutionally defective because it was so lacking in specificity as to render him unable to prepare his defense. The indictment alleged that, ". . . on the 26th day of December 1962 at and within [Cook] County Richard Davis committed the offense of robbery, in that he, by the use of force, and while armed with a dangerous weapon, took one hundred sixteen dollars in United States currency, robe, hat, two pair of pajamas and a tie set from the person and presence of Max Gillman. . . ." Defendant complains specifically of the failure to state the street address of the premises robbed, the approximate time of the offense, the citation of the statute violated, or the nature of the dangerous weapon. In light of the opinions of our Supreme Court in People v. Blanchett, 33 Ill2d 527, 212 NE2d 97, and People v. Reed, 33 Ill2d 535, 213 NE2d 278, we conclude that this indictment was sufficiently specific to satisfy constitutional and statutory requirements.

390

Defendant further assigns as error the court's denial of his petition for a bill of particulars, claiming that without the information requested therein he was unable to prepare his defense. In his petition, defendant alleged that he had no recollection whatsoever of anything which transpired on the date in question, and requested information as to the address at which he was arrested (not that of the premises robbed), the kind of "dangerous weapon" used, and the time of day of the alleged robbery.

 Section 111-6 of the Code of Criminal Procedure (Ill Rev Stats, c 38, § 111-6 (1963)), provides that the court may require the State's Attorney to furnish the defendant with a bill of particulars when the indictment, although valid, ". . . fails to specify the particulars of the offense sufficiently to enable the defendant to prepare his defense. . . ." After a careful examination of the record in this case, we have concluded that the trial court's denial of defendant's motion did not hinder the defendant in the preparation of his defense. The evidence identifying the defendant as the robber and describing his actions was so overwhelming that we are convinced the information which he requested could not have formed the basis for any defense to the charges. Defendant's only line of defense at the trial was that he was insane at the time of the acts and had no recollection of the events on the day of the crime. The information requested did not relate in any way to the preparation of such a defense. Whether the prosecution shall be required to give a bill of particulars in a given case rests in the discretion of the trial court, and only a clear abuse of that discretion in the denial of a motion is error. People v. Sims, 393 Ill 238, 242, 66 NE2d 86; see also the Committee Comments following SHA, c 38, § 111-6 (1963). Under the circumstances of this case, we conclude that the denial of defendant's petition was not such an abuse of discretion.

391

■ The defendant next contends that his conviction should be reversed because the State failed to satisfy its burden of proving beyond a reasonable doubt that the defendant was sane at the time of the alleged acts. Insanity is defined in § 6–2 of the Criminal Code (Ill Rev Stats, c 38, § 6–2 (1963)) as follows:

§ 6–2. Insanity

(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(b) The terms "mental disease or mental defect" do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct.

In People v. Skeoch, 408 Ill 276, 96 NE2d 473, our Supreme Court stated the presumptions and burdens of proof relating to an insanity defense as follows:

Under the law of this State the presumption [of sanity] is overcome by evidence, tending to prove the insanity of the accused, which is sufficient to raise a reasonable doubt of sanity at the time of the commission of the act for which the accused is sought to be held accountable. When that is done the presumption of sanity ceases and the prosecution is then required to prove the sanity of the accused beyond a reasonable doubt, as a necessary element of the crime charged. People v. Patlak, 363 Ill 40; People v. Casey, 231 Ill 261, 266, 267. (408 Ill at 280).

Counsel for the defendant argues that the peculiar nature of the defendant's actions at the time of the robbery, taken with the testimony of the defendant and that of two psychiatrists, raises a reasonable doubt as to

his sanity at the time of the robbery; and that thereafter the State did not introduce evidence sufficient to prove his sanity beyond a reasonable doubt. A review of each of these factors is necessary in evaluating this contention. Counsel characterizes as "peculiar conduct" the fact that defendant originally gave Gillman $30 in cash, which he later took back; that he made no attempt to restrain the persons in the store from observing his escape or from following him; that he hailed a taxi and rode only two blocks; and that at the time of the arrest he neither resisted, attempted to escape, nor concealed the bundle of stolen clothing. The record shows, however, that the defendant, at gunpoint, ordered all persons in the store to the rear, and according to the testimony of Gillman told them, "You stay in the back. You are not going to get hurt." He then ripped two telephones from the wall and escaped. Due to the prompt and brave action of Gillman, within minutes the defendant was faced with two police officers coming toward him on the stairs outside his third-floor hotel room. The fact that he submitted to arrest and search without resistance seems more a product of the circumstances surrounding his apprehension than of any mental derangement. Nothing in the conduct of the defendant on the day of the robbery suggests to us that he was not in possession of his faculties.

Testifying in his own defense, defendant said he had no recollection of events which had occurred in several periods of his life, including one beginning shortly before December 26, 1962, and ending six months after he was committed to the Illinois Security Hospital. He specifically stated that he had no recollection of the incident on December 26, 1962. However, the testimony of the two psychiatrists appearing for the defense casts a heavy shadow over this claim by the defendant. Dr. William H. Haines testified that there were occasions when he interviewed the defendant in the Illinois Se-

curity Hospital when he spoke coherently and with reference to the specific crime charged. Dr. Marvin Ziporyn testified that when he examined the defendant in October of 1964, the defendant showed some recollection of the incident surrounding his arrest, although his description of the events to the doctor was "hazy," "dreamlike," and "in primary process."

Defendant places great reliance upon the diagnoses and testimony of the two psychiatrists in support of his contention that the evidence raised a reasonable doubt as to his sanity. Dr. Haines first examined the defendant in January of 1963, in the Behavior Clinic of the Criminal Court of Cook County, and at that time entered a diagnosis of "suspected schizophrenic reaction." He then testified before the original sanity hearing jury that this would class the defendant as "insane," and defendant was committed to the Illinois Security Hospital. Dr. Haines examined the defendant on several occasions later in 1963, and testified at the trial that he reached the conclusion that defendant was malingering, or assuming symptoms for gain; and that his diagnosis in January of 1963 was incorrect in that defendant was not suffering from a schizophrenic reaction, but was in fact a sociopathic personality. When asked to explain what he meant by a sociopathic personality disturbance, Dr. Haines testified, "It is a disturbance of the individual's behavior, in which he does not conform to the rules of society." He contrasted it with a schizophrenic by pointing out that in the schizophrenic personality the individual has broken with reality, whereas this does not occur in the sociopathic personality.

Dr. Ziporyn examined the defendant for the first time in October of 1964, over twenty-one months after the robbery. As a result of that examination, he diagnosed the defendant as "afflicted with a chronic schizophrenia in a state of remission," and stated that he was able to date that condition back some twelve years. On cross-

394

examination, he testified that before he examined the defendant he knew nothing about him or his history except that he was under indictment for a felony. He stated that his examination indicated that the defendant's sensorium was intact, he was oriented to time, place and person, his memory was good and normal, he was in good contact with his environment, and his emotional stability was within normal limits, as were his dereistic thinking, his associations, and his apperception. He further stated that he found no signs of active psychosis. When asked what findings formed the basis for his diagnosis of, "chronic schizophrenia in a state of remission," Dr. Ziporyn named three factors: first that the defendant had told him that Dr. Haines had diagnosed him as a schizophrenic in January of 1963, and Dr. Ziporyn testified, ". . . I am aware of Dr. Haines' ability and I am certain that if he found active schizophrenia, that is what it was." The second factor was that defendant told Dr. Ziporyn that he had been troubled by hallucinations while confined in Kankakee State Hospital in 1953, and described those hallucinations for the doctor. The third factor supporting the diagnosis was the defendant's hazy and dreamlike description to Dr. Ziporyn of the incident on December 26, 1962, which Dr. Ziporyn testified was, "characteristic of what you frequently see in chronic schizophrenia."

Defendant also relies upon Dr. Ziporyn's answer to a hypothetical question in support of his contention that the evidence raised a reasonable doubt as to his sanity. The trial court subsequently ordered stricken the answer of Dr. Ziporyn to this question. Defendant challenges this ruling; but since we feel that ruling was proper (see discussion infra), we cannot include that answer in considering the evidence as to defendant's sanity.

 Considering the record as a whole, we conclude that the defendant failed to raise a reasonable doubt

as to his sanity to rebut the presumption that he was sane at the time of the robbery. His actions on that night do not seem peculiar to us; his testimony as to "amnesia" is open to serious question; and the testimony of Drs. Haines and Ziporyn offers little if any support for the contention that the defendant was insane on December 26, 1962.

■ ■ We turn next to the problem of the striking of Dr. Ziporyn's answer to a hypothetical question put to him by defense counsel. He was asked, during direct examination, whether a hypothetical person, whose actions and history were as described in the question, had been afflicted and a victim of a mental defect of any nature. The Assistant State's Attorney's objection was overruled, and Dr. Ziporyn answered, "My opinion is that this is an individual with a chronic mental defect and that it is entirely within the realm of medical possibility that at any given point he could be operating under the influence of such defects." On cross-examination, however, Dr. Ziporyn said, "The fact of the matter is, as we all know, the question of the hypothetical situation is a legal fix and I was aware that we were talking about this particular individual with this particular history, and my answer is based in terms of the fact that this hypothetical question applies to him and what I know about him." By this statement, Dr. Ziporyn admitted that his answer to the hypothetical question had been based not only upon facts stated in the question, but also upon other facts within his own knowledge not enumerated for the court. An answer to a hypothetical question based partly on facts gleaned apart from the trial and not included in the question should be stricken. 32 CJS Evidence § 557 (1964). Immediately after this statement was made by Dr. Ziporyn, the Assistant State's Attorney moved that his answer to the hypothetical question be stricken. The motion was granted, and the question was never reframed or asked again by defense coun-

sel. In view of Dr. Ziporyn's candid admission as to the basis for his answer, we conclude that the order of the court was proper.

█ There is a further reason for striking Dr. Ziporyn's answer to the hypothetical question. In the statement of the question, one of the facts to be assumed was, ". . . and on January 23rd, 1963, upon a sanity hearing was pronounced by Dr. Haines as suffering from—Dr. Haines stated that he would be grouped as a schizophrenic. . . ." No mention was made in the question of the fact that Dr. Haines' finding was of a *suspected* schizophrenic reaction, or of the fact that Dr. Haines later concluded that this finding had been incorrect. The question thus misstated the original finding and omitted highly relevant later findings. In Opp v. Pryor, 294 Ill 538, 128 NE 580, the Court stated,

> If the evidence as to the particular matter inquired about is not disputed it is obvious that the hypothetical question must contain all the facts or the opinion will not only be worthless but be likely to mislead the jury. If counsel selects from the undisputed facts those which are most favorable to his party and obtains an opinion thereon, the jury may forget the partial nature of the premises and adopt the opinion of the witness on the partial statement. (I Wigmore on Evidence, sec 682.) (294 Ill at 546).

The hypothetical question's misstatement and incomplete statement of Dr. Haines' findings is therefore an alternative basis for the court's ruling striking the answer.

██ Defendant's final contention is that the trial judge erroneously permitted three lay witnesses to testify in rebuttal over defense counsel's objection that the rule of exclusion of witnesses had been invoked and these witnesses had been allowed to remain in the courtroom after testifying the first time. The testimony of

397

which the defendant complains is that of Gillman and two police officers, wherein they stated that on the basis of their observation of the defendant on December 26, 1962, in their opinions, the defendant was sane. In People v. Fiorito, 413 Ill 123, 108 NE2d 455, our Supreme Court considered this question and stated that permitting a witness to testify again in rebuttal despite the fact that he violated the rule of exclusion is discretionary and not necessarily prejudicial. The court held that unless the defendant shows actual prejudice no abuse of discretion is shown and it is not prejudicial error. 413 Ill at 131. Defendant in this case has not made any such showing, and we fail to see how the rebuttal testimony of Gillman and the police officers could have been affected by the testimony which they were permitted to hear.

The defendant, pro se, has filed a petition in this court wherein he generally contends that the appointed counsel who represented him at trial was so incompetent that he was denied a fair trial. We have carefully reviewed the record and in our opinion it fails to establish that his appointed counsel was incompetent.

For the foregoing reasons the judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.