Barbara Jean Unger, Plaintiff-Appellant, v. Metropolitan Life Insurance Company, a Corporation, Defendant-Appellee.

Gen. No. 68–20.

Third District.

December 10, 1968.

Thomas Kavadas, Jr., of Sterling, for appellant.

Ward & Ward, of Sterling, for appellee.

CULBERTSON, J.

Plaintiff, Barbara Jean Unger, brought suit in the Circuit Court of Whiteside County to recover benefits of $1,096.55 (representing doctor and hospital bills for a hysterectomy), under a group health and hospitalization policy issued by the defendant, Metropolitan Life Insurance Company. After a bench trial, the court found that plaintiff could not recover because of material misrepresentation in the application for insurance and entered judgment for defendant. The plaintiff has appealed, contending that the finding of a material representation is against the manifest weight of the evidence; that de-

fendant failed to establish the materiality of the alleged misrepresentation by competent evidence; and that the trial court erred in allowing an unqualified person to give opinion testimony on subjects in the field of medical science.

Stating only those facts brought into focus by the scope of plaintiff's argument, it may be said that we are principally concerned here with two questions in the application for insurance coverage, which was dated September 28, 1966. They are, respectively and serially, questions 6 and 7 of Part C which inquired:

> "6. Have you (or any other . . . family member) received treatment, attention or advice from any physician or other practitioner for, or been told by any other physician or practitioner that you (or said family member) had:
>
> ". . .
>
> "(e) Epilepsy, paralysis, dizziness or any mental or nervous disorder?
>
> "7. During the past 5 years, have you (or any other family member) had any diseases, ailments, or injuries not revealed elsewhere on this application for which there was treatment, examination or advice by or under the direction of a physician or other practitioner, or at a clinic, hospital, dispensary or sanitorium." (If the answer to this question was "Yes," a subsequent space was provided for explanation.)

Undisputed evidence shows that the plaintiff, a registered nurse, visited a psychiatrist in 1961, 1962 and 1964, who diagnosed that she was suffering from a "psychoneurosis anxiety state." No mention of these visits was made in plaintiff's answer to question 7, and a negative answer was given to the inquiry of question

6 about treatment for "mental or nervous" disorders. Further, the record shows that plaintiff, as the result of an accident occurring December 4, 1965, had been treated by her doctor for a "severe" cervical sprain, or whiplash injury on February 18 and May 25, 1966, and that she had also been treated for cervicitis on September 21, 1966, which was but seven days before the application was signed. No mention of the treatment for either ailment was given in response to question 7. Plaintiff, with some corroboration from her husband, testified that she had mentioned these ailments to the insurance agent when the latter had read question 7, but that he had failed to make note of them in the answers he was recording. The agent, on the other hand, testified he had not been told about either ailment.

During the course of the trial plaintiff introduced the testimony of her employer, Dr. L. T. Ballard, whose medical specialty, if any, is not revealed in the excerpts of record before us, and that of Dr. M. D. Burnstine, a general practitioner with a subspecialty in neurology, who had been plaintiff's family physician for many years and who had performed the hysterectomy which provoked the present litigation. Both men testified, in substance, that they did not consider a psychoneurosis anxiety state to be a mental or nervous disorder, and that they had never known plaintiff to suffer from a mental or nervous disorder. For the defendant, which had the burden of proving that misrepresentations in the application were material to the acceptance of the risk, it was established by the testimony of Henry Bradley, its senior life underwriter, and by excerpts from a company manual, that the company would decline to insure where it appears that an applicant has suffered an episode of anxiety state neurosis within three years prior to an application. In explaining the company's attitude, the witness stated that claim experience had shown that such physical conditions as gastro-in-

154

testinal disorder, duodenal ulcers, heart palpitations and high blood pressure were often secondary to a psychoneurosis anxiety state. Additionally, proof was made from the manual that where an applicant has sustained a severe whiplash injury, a rider must be attached to the policy excluding coverage for diseases in, or injuries to, the cervical spine.

It is well established in this jurisdiction that an insurance policy may be avoided where, in the application for insurance, a misrepresentation is accomplished by withholding information material to the risk. (Campbell v. Prudential Ins. Co. of America, 15 Ill2d 308, 155 NE2d 9.) Whether the matters withheld, or misrepresented, are material is determined by the question of whether reasonably intelligent and careful men would have regarded the facts withheld "as substantially increasing the chances of the event insured against, so as to cause a rejection of the application or different conditions." (Weinstein v. Metropolitan Life Ins. Co., 389 Ill 571, 577, 60 NE2d 207.) And as Campbell and Weinstein, supra, both indicate, the misrepresentation, whether it. be accomplished by stating facts or withholding facts, need not be made with intent to deceive if it materially affects the risk (see also: Ill Rev Stats 1965, c 23, pars 766 and 971a), nor need the misrepresentation be one with regard to a matter upon which a claim is later predicated.

Because the defendant introduced no proof to contradict the testimony of plaintiff's medical witnesses that a psychoneurosis anxiety state is not a "mental or nervous" disorder, she asserts that she was not guilty of giving a false answer when question 6 was answered in the negative, and that the court's finding of a misrepresentation is therefore against the manifest weight of the evidence. This contention, however, is an over-simplification of the application, the record and the issue. As we view it, the question to be answered is whether

the interrogatories in the application form were sufficiently specific to require plaintiff to disclose information concerning her psychiatric treatment. And while it cannot be said this record clearly establishes that a psychoneurosis anxiety state is a mental or nervous disorder, so as to require disclosure under question 6, it is more than clear in our opinion that the visits to the psychiatrist should have been disclosed in response to question 7. The latter question, in plain, simple and unambiguous terms, asked, among other things, if the applicant had within 5 years, any disease, *ailments,* or injuries not revealed elsewhere in the application for which *treatment,* examination or *advice* was received from a physician or other practitioner. By withholding the information of psychiatric treatment, plaintiff prevented the insurer from appraising the risk on the basis of the facts as they existed.

 Furthermore, plaintiff's argument appears to overlook that even without considering the matters concerning her psychiatric problem and treatment, the record presents a basis for holding that a material misrepresentation occurred when she withheld information concerning her cervical sprain. Once again, question 7 was sufficiently clear and specific to have required disclosure of her treatment for this ailment, and the failure to disclose prevented defendant from a true appraisal of the risk. It is true that the question of whether the ailment was disclosed to the agent as the application was being filled out was in conflict. The trial court, however, had the function of determining the credibility of the witnesses and the weight to be accorded their testimony, and we cannot say that the finding of the court that a misrepresentation had occurred in such respect is against the manifest weight of the evidence. (See: Harvey v. Lippens, 87 Ill App2d 363, 231 NE2d 613; Landolt v. Stratmann, 87 Ill App2d 81, 230 NE2d 498.) Particularly is this true, even if we accept plain-

tiff's version of what occurred when the application was being completed. Her further testimony is a concession that the full extent of the cervical sprain was not revealed, but was represented as a little "overriding of her vertebrae" for which plaintiff, as a nurse, treated herself at home. Refuting this representation was an exhibit admitted on behalf of defendant which diagnosed the cervical strain as "severe," and revealed that there had been treatment with a cervical collar, muscle relaxants and diathermy.

Plaintiff next contends that defendant failed to establish by sufficient or competent evidence that her misrepresentations were material, the principal thrust of her argument being that Bradley, as an employee of defendant, was not competent to testify to such matter. Some jurisdictions, it is true, have held that an employee of an insurer is not competent to testify to materiality, the underlying notion being that materiality should not be settled by a pronouncement of the company, or its agents, after a policy claim has occurred. (See: 29A Am Jur, Insurance, § 1871.) Other courts, however, have held to the contrary, and this appears to be the view in Illinois. (Moyer v. John Hancock Mutual Life Ins. Co., 6 Ill App2d 1, 5, 126 NE2d 157; Government Employees Ins. Co. v. Dennis, 65 Ill App2d 365, 372, 212 NE2d 759.) The trial court determined this issue and its determination was supported by the record in this cause.

The final contention of defendant, namely that the trial court improperly permitted Bradley to express opinions in the field of medical science which he was not qualified to give, is likewise without merit. The record reveals that he expressed no medical opinion. Rather, based upon his experience as an underwriter, he merely stated that he had seen claims where there were physical conditions which were secondary to a psychoneurosis anxiety state, such as gastro-intestinal disorder, duode-

nal ulcers, heart palpitations and high blood pressure. Certainly the witness was competent to testify to matters within his own experience. Cf. Oakland Meat Co. v. Railway Express Agency, Inc., 46 Ill App2d 176, 196 NE2d 361.

The judgment of the circuit court of Whiteside County is affirmed.

Judgment affirmed.

ALLOY, P. J. and STOUDER, J., concur.