*In re* ESTATE OF JEAN V. STUHLFAUTH, Deceased.—(RICHARD G. STOVAL, Petitioner-Appellant, *v.* THOMAS J. KELLY, Indiv. and as Ex'r of the Will of Jean V. Stuhlfauth, *et al.*, Respondents-Appellees.)

Third District    No. 79-915

Opinion filed September 17, 1980.

J. Scott Swaim, of Swaim & Swaim, of Kankakee, for appellant.

William H. Taube, of Kankakee, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Jean V. Stuhlfauth died on March 19, 1976, and on April 13, 1976, Thomas J. Kelly petitioned the Circuit Court of Kankakee County to admit her will and codicil to probate. After the circuit court had admitted both the will and the codicil, petitions to have the instruments declared void were filed by Richard G. Stoval, decedent's son, and by Virginia Soda, decedent's niece. The thrust of the allegations in both the Stoval and Soda petitions was that the decedent lacked testamentary capacity and was subject to undue influence at the time she executed the will and again when she executed the codicil. A hearing was held during which evidence was heard in support of the Stoval and Soda petitions following which the trial judge concluded that the allegations were unproven and the petitions should be dismissed. Mr. Stoval appeals the determination reached below.

Prior to her death Jean V. Stuhlfauth had a long association with the family of Thomas J. Kelly. Thomas J. Kelly's father was the decedent's attorney for many years, and Thomas J. Kelly succeeded his father in the same capacity. Thomas J. Kelly's services to the decedent extended beyond the scope of a mere legal advisor to the point where he became Mrs. Stuhlfauth's confidante and friend. Attorney Kelly spoke by telephone with his client in over a hundred conversations during the period he represented her from 1968 to 1976. These conversations included topics such as income taxes, investments, the decedent's fears and apprehen-

sions, and the decedent's family. It is apparent from the evidence of letters and phone calls that attorney Kelly was an important sounding board for Mrs. Stuhlfauth regarding a wide variety of her concerns, only some of which could be said to be legally related.

The record also reveals that the decedent, Mrs. Stuhlfauth, was a troubled woman. In 1965 Jean V. Stuhlfauth was divorced from petitioner Stoval's father. The record suggests that the decedent was bitter about the divorce and that she blamed both her ex-husband and her son for an involuntary commitment for mental treatment she had previously undergone. Further, the decedent, after release from commitment, reported from time to time to friends and associates that an unidentified "they" were out to "get her" and "they" followed her from one location to another with "poisonous fumes." The sinister "they" were never identified, and their alleged efforts to harm Mrs. Stuhlfauth with poisonous fumes were never corroborated.

Aside from the decedent's apprehensions about unidentified enemies, the record reflects a pattern of behavior exhibited by decedent that is hardly extraordinary. She lived alone and took care of her affairs without incident. She paid her rent promptly, did her own banking, kept an orderly house, and prepared her own meals. She was aware of the stock and securities she owned and made inquiry when dividends were unpaid. The decedent recognized her obligation to pay income tax and caused returns to be prepared and filed on her behalf.

The evidence adduced below suggests that the close relation between Mrs. Stuhlfauth and her attorney, Thomas J. Kelly, combined with the strained relation between Mrs. Stuhlfauth and her son, caused the decedent to approach her attorney concerning drafting of a will that would name her attorney, Mr. Kelly, as the sole beneficiary. According to Mr. Kelly's uncontradicted testimony, this request was flatly refused on more than 10 occasions. Alternatively, the decedent suggested a testamentary plan that would benefit attorney Kelly's son. Again, according to the uncontradicted testimony of Mr. Kelly, this request was similarly refused. Excerpts from a letter of April 22, 1973, in the handwriting of the decedent read as follows:

> "Tom, I would like to make a Will out. Your father started and didn't finish. The last time I talked to Atty Liffshin, he told me I could make out a Will and leave nothing to my son. Tom, I would like to make out my Will leaving everything to your family.
> My sister was married to Mark Conboy. He has past [sic] away. Pete Conboy's funeral home is on North Ave. He buried my mother. There is a plot next to my mother. My sister told me I could have it. I am not sure, I think Pete Conboy has the deed. The Cemetery Mount Carmel. I would like Pete Conboy to take care of my burial."

Mr. Kelly responded by urging the decedent that the appropriate object of her testamentary beneficence was her son, the petitioner here.

Mrs. Stuhlfauth was undaunted by the refusals of attorney Kelly and she sought from friends and neighbors the name of another attorney. These inquiries led the decedent to the office of Edwin O. Daw, like Mrs. Stuhlfauth a resident of Riverside, Illinois. When Mr. Daw was apprised of the testamentary plan preferred by the decedent, he too suggested that a more appropriate object of her bounty would be her son, the petitioner here. At attorney Daw's suggestion, no action was taken regarding the will on decedent's first visit and by agreement she returned home and considered again the appropriateness of her designs.

Unperturbed, the decedent returned some days later to the office of attorney Daw and renewed her request that he draft a will on her behalf which named attorney Kelly's son as the primary beneficiary. At this time attorney Daw complied, but not without first contacting attorney Kelly by phone. There is no evidence in the record to dispute the testimony of both Daw and Kelly that this phone conversation was the first time the two had ever had contact with one another, in person, by letter, or otherwise regarding this or any other matter, business, personal or social. In this first conversation attorney Kelly urged his professional colleague to counsel Mrs. Stuhlfauth against the testamentary action she was contemplating.

Mr. Daw was unable to dissuade the testatrix from the course she was set upon, and finally he acquiesced to her wishes and drafted an instrument naming attorney Kelly's son as her primary beneficiary and establishing a guardianship to administer the bequest to the minor legatee. Attorney Daw mailed the will to his client along with a cover letter explaining the procedure for executing wills. Although it was his customary practice to execute wills in his office, attorney Daw explained that this exception from the normal procedure was at the express request of the decedent.

Mrs. Stuhlfauth regularly conducted business at the Riverside National Bank, where her acquaintance of 25 years, Mr. Reed G. Hemminger, was employed. Mr. Hemminger had operated a pharmacy in Riverside prior to his association with the bank and the decedent patronized both establishments. Mr. Hemminger had helped the decedent occasionally since her divorce, and from time to time Mr. Hemminger's wife brought soup and other things to the decedent during the same period. It was to the Riverside National Bank and to Mr. Hemminger that the decedent brought her will on January 24, 1974. When Mr. Hemminger learned of the testamentary plans contained in the Daw will, he joined others in advising against such a scheme of disposition, but Mrs. Stuhlfauth persisted. She said that she wanted Mr. Hemminger and Lawrence Dolosic to be witnesses to her will.

Mr. Dolosic was a teller for the bank whom the decedent had grown very fond of and whom she specifically requested to sign her will. Eventually Mrs. Stuhlfauth prevailed and the will was executed.

Following the signing of the will in the Riverside National Bank, attorney Kelly received by mail from Mrs. Stuhlfauth a *fait accompli*, *viz.*, an executed copy of the will he refused to draft and condone. The trial court concluded that this will was not the result of undue influence exerted upon Mrs. Stuhlfauth by attorney Kelly. We agree.

■■ Undue influence arises when the dispository provisions of a will are more the will of the influencer than the testatrix.

> "The circumstances which raise a presumption that a will was executed as a result of undue influence on the testator, and if proved and unrebutted, are sufficient to void the will follow:
>
> (1) a fiduciary relationship between testator and a person who receives a substantial benefit under the will (compared to other persons who have an equal claim to testator's bounty);
>
> (2) a testator in a dependent situation in which the substantial beneficiaries are in dominant roles;
>
> (3) a testator who reposed trust and confidence in such beneficiaries; and
>
> (4) a will prepared or procured and executed in circumstances wherein such beneficiaries were instrumental or participated. Once proved, a *prima facie* case of undue influence has been established." (*Beyers v. Billingsley* (1977), 54 Ill. App. 3d 427, 436-37, 369 N.E.2d 1320, 1327.)

It should be noted that the circumstances recited by the *Beyers* court raise a presumption, and however strong that presumption may be, it is subject to being rebutted by contrary evidence. In the instant case it can be conceded for the purpose of this discussion that the first three criteria enumerated in the *Beyers* opinion were present and uncontested. It is essentially the fourth element cited by *Beyers* that is in dispute.

■■ The trial court heard attorney Kelly testify that he refused to prepare Mrs. Stuhlfauth's will according to her wishes and that at all times he discouraged her from such a testamentary plan. The testatrix was determined not to be frustrated and sought another attorney, who, according to his testimony, only performed the requested legal service afer counseling against same and after insisting on a period of reconsideration. Finally, the witness to the will, Mr. Hemminger, a long-time acquaintance of Mrs. Stuhlfauth, testified that he unsuccessfully advised against the proposed testamentary disposition. There is not a scintilla of evidence in the record that attorney Kelly prepared the controverted will or that he caused the testatrix to seek out attorney Daw to have same prepared. Rather, the evidence demonstrates that the testatrix had available independent counsel

and that such independent counsel were not working at the behest and direction of attorney Kelly. To determine otherwise now would be tantamount to the assertion that the appellate court is better equipped to determine the credibility of witnesses based on a review of the cold record than was the trial judge below. Such an assertion defies reasoned analysis and contradicts the time-tested standard of appellate review.

> "In nonjury cases the credibility of the witnesses and the weight afforded their testimony are questions to be determined by the trial court. (*Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 312 N.E.2d 42; *Unger v. Metropolitan Life Insurance Co.* (1968), 103 Ill. App. 2d 150, 242 N.E.2d 907.) A reviewing court will not substitute its judgment as to credibility of witnesses unless the findings of the trial court are against the manifest weight of the evidence. *Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518; *Rhodes v. Sigler* (1975), 27 Ill. App. 3d 1, 325 N.E.2d 381." (*Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 92, 379 N.E.2d 1307, 1315.)

Accepting as did the trial court the veracity of the testimony of Kelly, Daw, and Hemminger, we conclude that it was not against the manifest weight to find no undue influence on the testatrix in the execution of the January 24, 1974, will.

The trial court was undoubtedly influenced in its evaluation of the decedent's motives by the import of petitioner Soda's exhibit No. 7. That exhibit, introduced into evidence, is a testamentary instrument prepared by Mrs. Stuhlfauth in her own hand and signed by her along with two witnesses on February 12, 1966. That holographic testamentary instrument inartfully designates petitioner Soda and her husband as primary beneficiaries while explicitly limiting petitioner Stoval to a legacy of $1. The tenacity of the testatrix in pursuing her testamentary aims in 1973 and 1974, as testified to by Messrs. Kelly, Daw, and Hemminger, is all the more believable when viewed in light of the decedent's desire dating back to 1966 to minimize her son's inheritance.

The evidence regarding the codicil and the events surrounding its execution lead us to a different conclusion than was reached by the court below. Sometime after the will was executed, Mrs. Stuhlfauth mailed a copy of the executed instrument to attorney Kelly. As we previously recounted, attorney Kelly was presented with a *fait accompli* which he had opposed and advised against. Now, however, upon reviewing the will as drafted, attorney Kelly was distressed that the scrivener had chosen to make the primary bequest using a guardianship device rather than a trust device. Having accepted the fact that he could not deter Mrs. Stuhlfauth from her testamentary designs, Kelly sought at least to encourage her to adopt a dispositive device that lent itself to ease of administration. To that end he drafted a codicil to the Daw will which would have replaced the

guardianship with a trusteeship and which would have expressly disinherited petitioner Stoval. That codicil was forwarded to attorney Daw. According to Kelly, the codicil was only intended as a suggestion for Daw to review, then adopt and implement at his discretion. Attorney Daw received the codicil by mail, reviewed it, and forwarded it to the decedent. The decedent executed the codicil in a manner similar to the procedure previously employed in the execution of the will.

■■ We believe the circumstances surrounding the preparation of the codicil are markedly different from those surrounding the execution of the will. Attorney Kelly stood in a fiduciary relation with the testatrix. He stood to benefit from the codicil if his legal obligation of support to his son were discharged in part by the legacy of Mrs. Stuhlfauth. She looked to attorney Kelly for advice and counsel and she trusted and confided in him. Finally, attorney Kelly prepared the codicil and actively solicited its execution. But for the initiative and purposeful actions of attorney Kelly, the codicil would never have been executed. This evidence is sufficient to raise a presumption of undue influence as a matter of law. *Beyers v. Billingsley* (1977), 54 Ill. App. 3d 427, 369 N.E.2d 1320.

■■ It is clear that the codicil represented the will of attorney Kelly, not the will of Mrs. Stuhlfauth. While the presumption of undue influence may be rebutted, there is no evidence of such rebuttal in the record of the case at bar. While intervening independent advice may in some instances serve to purge the taint of undue influence (79 Am. Jur. 2d *Wills* §429 (1975)), attorney Daw admits in his testimony that he offered no advice as regards to execution of the codicil but merely forwarded the same to Mrs. Stuhlfauth. We believe there is no evidence in the record by which the trial court could have found the presumption of undue influence rebutted as regards the execution of the codicil. Only by reason of the affirmative acts of attorney Kelly was the codicil ever prepared and executed. Accordingly, the court below should have determined that the codicil was not valid because of undue influence on the testatrix.

■■ In addition to undue influence, petitioner Stoval sought to prove that Mrs. Stuhlfauth lacked testamentary capacity:

> "Testamentary capacity requires sufficient mental ability to know and remember who are the natural objects of [one's] bounty, to comprehend the kind and character of [one's] property and to make disposition of the property according to some plan formed in [one's] mind. (*Quellmalz v. First National Bank* (1959), 16 Ill. 2d 546, 158 N.E.2d 591; *Morecraft v. Felgenhauer* (1931), 346 Ill. 415, 178 N.E. 877.) Deliberate disinheritance of an heir does not establish inability to know the natural objects of testator's bounty." (*Beyers v. Billingsley* (1977), 54 Ill. App. 3d 427, 437-38, 369 N.E.2d 1320, 1328.)

It is uncontradicted that at the time the will was executed in January 1974,

Jean Stuhlfauth knew who her son was and knew that she did not wish to remember him in her will. It is also uncontroverted that Jean Stuhlfauth knew the kind and character of her property. In certain circumstances, however, where the testatrix knows the objects of her bounty, but suffers from delusions regarding those objects, capacity is found to be lacking.

> "* * * an insane delusion which will render one incapable of making a will is difficult to define * * * [I]t may be said to be present where a testator, without evidence of any kind, 'imagines or conceives something to exist which does not exist in fact, and which no rational person would, in the absence of evidence, believe to exist.' (*Snell v. Weldon*, 243 Ill. 496.) * * * [W]here injustice, unfairness, prejudice or anger habitually appear in respect to the same subject without any reason and are adhered to after their falsity is demonstrated, they become strong and satisfactory evidence of a mental derangement." (*Sterling v. Dubin* (1955), 6 Ill. 2d 64, 77, 126 N.E.2d 718, 725.)

The *Sterling* case presents a very narrow objection to testamentary capacity. Such an objection must result from an insane delusion.

■■■ "People may hate their relatives for bad reasons, and yet not be deprived of testamentary power." (*Carpenter v. Bailey* (1892), 94 Cal. 406, 419, 29 P. 1100, 1105.) In the instant case there was evidence that the testatrix disliked her son because she held him responsible for her involuntary commitment. There was evidence that the testatrix thought her son had favored her ex-husband following their marital dispute. There was evidence that the testatrix did not like the way her son groomed himself and dressed himself. Thus there was evidence in the record by which the trial court could conclude that petitioner Stoval's disinheritance was based upon reasons, albeit bad reasons, which were not a product of Mrs. Stuhlfauth's delusions about fumes.

> "Where the evidence on the issues of mental competency and undue influence in a will contest is conflicting, that on either side being sufficient, alone, to sustain a verdict for that side, the jury and the trial judge are in a better position to determine the issues than is a reviewing court, and a judgment upholding the will will not be reversed on the evidence unless the verdict is contrary, to the manifest weight thereof. See *Sulzberger v. Sulzberger*, 372 Ill. 240." (*Sterling v. Dubin* (1955), 6 Ill. 2d 64, 126 N.E.2d 718, 724.)

The decedent's dislike of petitioner Stoval was not "without any reason" as the *Sterling* case requires, and the trial court determined that the reasons for the feud between mother and son did not flow from delusions about fumes. That finding was not against the manifest weight of the evidence as we have recited other explanations for the disassociation. Where the prejudices of a testatrix can be explained by "any other ground than an insane

delusion, she [is] not disqualified from making a will." *Jackman v. North* (1947), 398 Ill. 90, 100, 75 N.E.2d 324, 329.

Petitioner Stoval called an expert witness to testify regarding the delusions allegedly suffered by the decedent. In response to objection, the trial judge determined that the expert, Dr. Ronald Shlensky, a certified psychiatrist, considered matters outside the record in responding to a hypothetical question. A request to strike the hypothetical question was made and granted. It is error to consider matters outside the scope of the hypothetical inquiry, and such questions are properly stricken. (*People v. Davis* (1966), 73 Ill. App. 2d 386, 220 N.E.2d 75.) The record clearly supports the finding that the psychiatrist's opinion considered matters outside the hypothetical question's scope, and the decision to strike was correct.

Attorneys for the executor who defended the January 1974 will also offered expert testimony below regarding the decedent's delusions. The testimony of this second expert, Dr. David Buck, was objected to because his name was omitted from a discovery request. Ignoring its power to exclude a witness as a discovery violation sanction (Ill. Rev. Stat. 1977, ch. 110A, par. 219), the court permitted the second expert to testify. A request was made for the names of expert witnesses and the attorney for the executor made no mention of Dr. Buck in his formal response. Informally, however, there was an oral response to the attorney for petitioner Stoval some months before the hearing. In that response petitioner's attorney was provided with the name of Dr. Buck.

■■ Generally, the imposition of sanctions for failure to comply with a discovery request is within the sound discretion of the trial judge. (*Clay v. McCarthy* (1979), 73 Ill. App. 3d 462, 392 N.E.2d 693.) That discretion will not be disturbed unless improperly exercised. (*Clay v. McCarthy.*) In exercising its discretion, it would not be improper for the court to consider the purposes of discovery procedures and to what extent those purposes would be offended if sanctions were not exercised. We deem that one important purpose served by mandatory discovery is the limitation on trial by trick and surprise. In the instant case, the technical violation of discovery rules did not result in surprise to petitioner's attorney, for he knew in advance the identity of the second expert. While informal, oral responses to discovery requests are not to be condoned and should not in all cases escape the court's sanction, we cannot say that justice was abused in the case at bar by failure to administer sanctions.

Finally, petitioner Stoval objects that he and his wife were not permitted to testify to certain conversations and transactions with the decedent. In so ruling, the court relied on *Heineman v. Hermann* (1943), 385 Ill. 191, 52 N.E.2d 263, and that case's interpretation of the Dead Man's Act (Ill. Rev. Stat. 1977, ch. 51, par. 2). Petitioner argues that the holding in *Heineman* was implicitly modified by *Foster v. Englewood Hospital Association*

(1974), 19 Ill. App. 3d 1055, 313 N.E.2d 255. We find it unnecessary to decide the issue as thus posed. Having reviewed the offers of proof setting forth the testimony of the excluded witnesses, we find that testimony essentially cumulative. If it was error to exclude certain testimony by Mr. and Mrs. Stoval, such error would not have affected the decision reached below and thus was harmless.

After reviewing the record and weighing the arguments of counsel, we hold the decision of the circuit court to be affirmed in part and reversed in part consistent with the views hereinbefore set forth.

Affirmed in part and reversed in part.

ALLOY, P. J., and STENGEL, J., concur.