BI-LINK METAL SPECIALTIES, INC., Plaintiff-Appellee, *v.* LOUISIANA & SOUTHERN LIFE INSURANCE COMPANY, Defendant-Appellant.

First District (1st Division)    No. 80-478

Opinion filed April 27, 1981.—Rehearing denied June 8, 1981.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Robert Geiman, Ellen J. Kerschner, and Robert A. Seidel, of counsel), for appellant.

Daniel Karlin and Barry L. Weinstein, both of Chicago (Michael J. Cozzi, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

This appeal concerns the proceeds of a key-man insurance policy for $150,000 on the life of Dean D. Haas, deceased. Bi-Link Metal Specialties, Inc. (plaintiff), the beneficiary of this policy, brought this action against the insurer, Louisiana & Southern Life Insurance Company (defendant). Plaintiff filed a motion for summary judgment, which was granted. Defendant's motion to vacate the order granting summary judgment was denied.

Most of the facts in this appeal are not disputed. Dean D. Haas (insured), the vice president of plaintiff corporation, submitted an application for life insurance in the fall of 1973. Plaintiff was designated as the policyowner and beneficiary. On October 11, 1973, the insured underwent a physical examination in conjunction with the insurance application. The examining physician, Dr. Hyman Hirshfield, took an electrocardiogram (EKG), chest X ray and specimen sample. These were sent to the vice president of underwriting for defendant, C. L. Cooksey. Upon his request, insured's regular physician sent in an Attending Physician's Statement (APS). The APS disclosed insured's general medical history. It indicated that insured had experienced chest pains, had elevated blood pressure and cholesterol levels, and that he had previously undergone a double-Masters EKG.

After reviewing the underwriting file, Cooksey referred the file to the consulting medical director, Dr. Meyer Kaplan, for his review and recommendation. It was found that insured's EKG was borderline. The EKG tracings showed minimal changes which could possibly indicate the presence of heart disease. Thus, there was an increased underwriting risk and a further double-Masters EKG was recommended. This test was performed by Dr. Hirshfield on November 13, 1973.

Dr. Kaplan reviewed the results of this second test. He found the tracings revealed nonspecific wave changes. The doctor found no evidence in the EKG test which indicated the presence of any acute coronary insufficiencies. However, he later stated that the particular wave changes found on insured's EKG may or may not represent early changes in connection with beginning heart disease or arteriosclerotic heart disease. Dr. Kaplan also indicated that the chest pains experienced by insured were relevant in his review of the EKG tracings, but that chest pains are not necessarily caused by heart problems.

Together with the reinsurer, Lincoln National Life Insurance Company, Cooksey determined that insured's application should be charged at an increased mortality rate because of the risk of coronary or cardiac involvement. Thus, insured was assigned a Table 4 rating, that is, at a 100% increase over the normal rating. An amendment to the application, dated November 29, 1973, reflected the increased rating.

On December 3, 1973, insured experienced chest pains and went into the hospital for a checkup. This occurred after the initial application and the amendment were signed, but before the policy was delivered to the plaintiff. Insured's discharge summary sheet showed that a diagnosis of coronary heart disease with acute coronary insufficiency was made.

On December 7, 1973, while insured was still in the hospital, the policy was delivered to plaintiff by defendant's writing agent. At this time plaintiff, through its chief operating officer, Jerome Lorbeck, accepted

delivery of the policy without informing the agent that insured was in the hospital. Also, the agent did not inquire of Lorbeck as to the condition of insured's health. Insured's state of health was not discussed at all.

On June 13, 1975, 18 months after the policy became effective, insured came to his death. The cause of death was cancer, which was unrelated to the heart problem leading to the hospitalization. The policy application provided: "* * * [T]he insurance applied for shall not take effect unless the full first premium is paid and the policy is delivered to the owner while the health, habits and occupation of the proposed insured remain as described in the application."

Defendant contends a genuine issue of material fact exists which requires determination by a jury; that is, whether insured's health at the time of the delivery of the policy was the same as described in the application. Defendant further contends that insured breached his legal and affirmative duty to disclose the change in his health which occurred between the dates of the application and the delivery of the policy.

Plaintiff argues that there is no genuine issue of material fact because insured's hospitalization was for a condition upon which insured was rated and which condition did not relate to insured's death. Thus, plaintiff argues, there was no breach of the duty to disclose because there was no material change in health. It is also asserted by plaintiff that the policy is conclusive as to defendant because its agent failed to inquire about insured's health when the policy was delivered.

There is merit to this last contention. Recently, in *Seidler v. Georgetown Life Insurance Co.* (1980), 82 Ill. App. 3d 361, 402 N.E.2d 666, we were faced with a similar situation. In that case, too, delivery of an insurance policy was made without any inquiry as to the health condition of the insured. We cited, with approval, *Hungate v. New York Life Insurance Co.* (1932), 267 Ill. App. 257, 260, where the court stated:

> "It has been held that if any length of time elapses between the making of the application and the issuing of the policy, it is the duty of the insurer to make inquiry when the policy is delivered as to the condition of the health of the insured, and if it fails to do so the delivery is conclusive against the insurer as to the completion of the contract. * * *"

It is undisputed that defendant failed to exercise its legal duty to inquire as to the insured's health at the time of delivery of the policy. The policy at issue here is valid and conclusive as to defendant insurer for this reason. However, as in *Seidler*, the determination of this issue alone is not dispositive.

The authorities cited by defendant are cases where an applicant made a material misrepresentation in the insurance application: *Western & Southern Life Insurance Co. v. Tomasun* (1934), 358 Ill. 496, 193 N.E.

451 (failure to disclose on application cancer-related surgery and misrepresenting overall good health); *Carroll v. Preferred Risk Insurance Co.* (1966), 34 Ill. 2d 310, 215 N.E.2d 801 (failure to inform insurer of a fatal accident prior to issuance of policy); *Alperin v. National Home Life Assurance Co.* (1975), 32 Ill. App. 3d 261, 336 N.E.2d 365 (failure to disclose on application treatment for chest pains, angina and hypertension); *Unger v. Metropolitan Life Insurance Co.* (1968), 103 Ill. App. 2d 150, 242 N.E.2d 907 (misrepresentation on application of psychiatric visits and whiplash injury).

There is no contention here that insured made any misrepresentations on his application for insurance. Defendant was aware of insured's medical history, including the chest pains. A physical examination was made. Two different EKG tests were taken and evaluated by defendant's consulting medical director. It was on this extensive underwriting file that insured was assigned an increased risk rating. This set of circumstances is factually similar to that presented in *Seidler*. In both cases the applications accurately revealed each applicant's state of health. In each case the applicant went into a hospital prior to the time the insurance policy was delivered. Neither insurance company was apprised of this information before the policy was delivered. The significant difference is that in *Seidler* there was a disputed issue of material fact as to whether the death of the insured resulted from the same medical factors which caused his hospitalization. However, in the instant case the issue is whether a material question of fact has been presented as to causation; specifically, whether a change in health had occurred to insured with reference to the time of the origination of the fatal disease. There is no question that insured died as a result of cancer-related causes. It also is clear that insured's hospitalization was a manifestation of his admitted chest pains. Examining the record before us, there is no doubt that there is no relationship between the cause of insured's hospitalization and his eventual cause of death. It follows, then, that neither the insured nor plaintiff breached any duty to inform defendant of the hospitalization.

Section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57(3)) provides that summary judgment is appropriate "* * * if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

No issue of material fact exists here. Accordingly, the summary judgment in favor of plaintiff is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.