**Shirley F. WILLARD, Plaintiff,**

v.

**VALLEY FORGE LIFE INSURANCE, COMPANY, et al., Defendants.**

**No. CV 00–1005 GLT.**

United States District Court,
C.D. California,
Southern Division.

May 17, 2002.

---

---

George Baltaxe, Baltaxe & Baltaxe, Encino, CA, for Plaintiff.

Robert F. Keehn, Galton & Helm, Los Angeles, CA, for Defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

TAYLOR, District Judge.

Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Cross Motion for Summary Judgment is DENIED.

## I. BACKGROUND

Plaintiff, the widow of Mr. Robert Willard[1] and beneficiary of his life insurance policy, brought breach of contract claims against Defendant Valley Forge Life Insurance Company for the payment of her husband's $200,000 life insurance policy benefits. Defendant refused to pay the benefits because it contends the policy is void. Defendant claims the policy never took effect because Willard did not disclose his fatal diagnosis of pancreatic cancer.

On July 9, 1998, Willard signed and submitted a $200,000 life insurance policy application to Defendant. The insurance application provided the policy took effect upon immediate payment with submission of the application, or upon receipt of payment due if the insured's health had not changed since the initial application. Defendant's representative, Paul Simon, declares Willard intended to replace his former policy from Massachusetts Mutual Life with Defendant's policy.[2] Simon testified he regularly tells clients they secure interim coverage by making a payment upon submission of the application, but otherwise the policy is not effective until delivery and payment. Willard chose not to make an immediate premium payment.

Willard learned he had a mass on his pancreas on September 1, 1998. The doctor suggested the mass was cancerous. Within the next week Willard underwent a series of tests. By September 16 or 21,

---

1. Willard was a practicing litigation attorney Newport Beach.

2. Willard never replaced the Mutual Life policy and Plaintiff received its $200,000 of benefits.

1998,[3] the doctors knew and told Willard he had pancreatic cancer. On September 24, 1998, Simon delivered the policy to Willard, and Willard gave Simon a check for the year's entire premium. Simon submitted the check to Defendant on September 28, 1998. The check could not be cashed because Willard's account had insufficient funds. On October 28, 1998, Willard received Defendant's letter stating his account had insufficient funds and a new check was needed. The next day, Willard received a notice of elapsed policy from Defendant.

Defendant cashed Willard's replacement payment on November 9, 1998. A few days later, Willard was notified Defendant acknowledged the replacement check and received a reinstatement application. However, when Willard contacted Defendant, the representative stated he did not need to complete additional paperwork, reinstatement was not necessary, and his policy was effective.

On July 11, 1999, Willard died from pancreatic cancer. After Plaintiff sought the policy payment, Defendant investigated Willard's application process and health records. Defendant declined to pay Plaintiff because, it contends, Willard's policy never took effect. Defendant asserts the policy would have become effective only upon payment for an insured whose health was the same as represented in the application. Plaintiff's health status changed between his July 1998 application and his November 1998 delivery of valid payment. Defendant also claims that, even if the policy should have taken effect, the policy should be rescinded because Willard defrauded Defendant and breached his good

faith duty by not giving notice of his cancerous condition.

Plaintiff claims the policy took effect upon receipt of payment and Defendant waived its right to know about Willard's changed health by not requiring Willard to complete additional paperwork. Plaintiff contends, even though Willard's payment was delayed, Defendant's characterization of the policy as lapsed and reinstated absolved Willard from disclosing health changes until his payment was accepted because the reinstatement process does not require such disclosures. Plaintiff also claims Willard did not have an affirmative duty to update the Defendant about his health, but the insurance company was responsible for seeking such information.

Defendant and Plaintiff each bring Motions for Summary Judgment.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is proper if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B.  Good Health Provision

■  A good health provision, which requires a prospective insured's health condi-

---

**3.** Plaintiff contends the twenty-first is the correct date, and Defendant asserts the sixteenth is the right day.

tion remain the same between application and policy delivery dates, is a condition precedent to coverage. *See Lunardi v. Great–West Life Assurance, Co.*, 37 Cal. App.4th 807, 44 Cal.Rptr.2d 56, 64 (1995) (finding plaintiff did not meet the condition precedent where application indicated the application responses must remain true at time of payment and delivery, otherwise the policy was ineffective). Willard's application provided:

> The Proposed Insured(s) ... agrees that: (1) all statements and answers in this application are complete, true and correctly recorded to the best of my (our) knowledge and belief; (2) if this application is accepted by the Company, the policy applied for and this application will constitute the entire insurance contact; (3) if no premium has been given to the agent with this application, insurance(s) will *not take effect until* the application is approved and accepted by the Company at CNA Plaza, Chicago, Illinois, 60685, and the policy is delivered *while the health* of each person proposed for insurance *and other conditions remain as described in the application* and at least the Minimum Premium for the Quarterly Mode (for Universal Life) or the first premium (for all other plans of insurance has been paid in full.) (emphasis added)

■ Good health provisions are enforceable conditions precedent. *See Lunardi*, 44 Cal.Rptr.2d at 64 (finding good health provision to be a valid condition precedent and failure to notify insurer about a change condition as required made the policy ineffective); *Am. Nat'l Ins., Co. v. Herrera*, 211 Cal.App.2d 793, 27 Cal.Rptr. 641, 645–46 (1963) (explaining such condi-

tions are not contrary to public policy or statutory law). A contract is unenforceable if a condition precedent is not met. *See Platt Pacific v. Andelson*, 6 Cal.4th 307, 24 Cal.Rptr.2d 597, 862 P.2d 158 (1993); *Metro. Life Ins., Co. v. Devore*, 66 Cal.2d 129, 56 Cal.Rptr. 881, 424 P.2d 321 (1967).

■ Willard's health status changed between his application date in July 1998 and his delivery dates in September[4] and November 1998 because he was diagnosed with pancreatic cancer, which eventually caused his death. The policy language required Willard to inform Defendant about this change in his health. *See* Application ("not take effect until ... approved ... while health ... remain[s] as described in ... application"). Willard did not meet this condition precedent because he did not notify Defendant about the diagnosis, and his health status changed since he submitted the application. *See e.g., Devore*, 66 Cal.2d at 138, 56 Cal.Rptr. 881, 424 P.2d 321 (finding insured was not covered by policy where he did not comply with condition precedent because he knew his health changed between his application and delivery dates, but did not tell insurer).

■ Under a plain-meaning application of the good health clause, insurance coverage would fail if the insured's health changed before the policy was issued, whether he told the insurance company about it or not. *American National Ins. Co. v. Herrera*, 211 Cal.App.2d 793, 27 Cal.Rptr. 641 (1963). This application may be rejected as too harsh when "dealing with an insured who is apparently in good health and who is acting in good faith."

---

4. The September 1998 delivery was never completed because Willard did not provide proper payment or notice of change in health, as required.

*Brubaker v. Beneficial Standard Life Insurance Co.,* 130 Cal.App.2d 340, 344–345, 278 P.2d 966 (1955). That exception would be inapplicable here: Willard knew he was not "apparently in good health," and he was not acting in good faith to withhold that fact. *Metropolitan Life Ins. Co. v. Devore,* 66 Cal.2d 129, 140, 56 Cal.Rptr. 881, 424 P.2d 321 (1967).

■ Plaintiff contends Defendant waived its right to this information because it did not require Willard to complete a Statement of Health Form, which asked about changes to an insured's health since his initial application.[5] Plaintiff's assertion Defendant's failure to request additional medical information from Willard constituted a waiver of updated material medical information is unpersuasive.[6] In his application, Willard agreed his policy would not be effective until payment, assuming his health status had not changed between the application and delivery dates. Willard knew his health condition changed between those dates and did not tell Defendant. Willard's changed health condition caused his death. Despite Willard's eventual payment, his policy was ineffective because he did not comply with the condition of good health included in the application and Defendant did not waive that condition precedent.

## C. The Parties' Duties

■ The cases relied on by Plaintiff and Defendant all hold the insured has a legal and contractual duty to inform the insurer of any changes in his health condition newly discovered after the application and before the delivery dates. *See e.g. Mutual Life Ins., Co. v. Hilton–Green,* 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202 (1916); *Lunardi,* 44 Cal.Rptr.2d at 64; *Miller v. Republic Nat'l Life Ins. Co.,* 789 F.2d 1336, 1339 (9th Cir.1986); *Seidler v. Georgetown Life Ins., Co.,* 82 Ill.App.3d 361, 37 Ill.Dec. 664, 402 N.E.2d 666, 668–70 (1980); *Thompson v. Occidental Life Ins. Co.* 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353, (1973); *Telford v. New York Life Ins. Co.,* 9 Cal.2d 103, 107, 69 P.2d 835 (1937); 6 Couch on Ins. § 87:2 (3d

---

**5.** Plaintiff claims *Lunardi,* which found insurance policy ineffective because insured did not disclose his changed health condition, is distinguishable from this case because the *Lunardi* —insured concealed his deteriorating health after the insurance company asked him for additional medical information. Willard was obligated by the application terms to notify Defendant. The Court does not find Willard's concealment to be less significant than the insured in *Lunardi. See Lunardi,* 44 Cal.Rptr.2d at 64 (emphasizing the condition for good health provides insurer with a continuing right to be advised of any health changes between the application and delivery date).

**6.** The Court finds unpersuasive Plaintiff's other waiver arguments based on Defendant's notification letter indicating Willard's initial premium check was invalid or Defendant's initial mischaracterization of the acceptance of proper payment as a reinstatement. De-

fendant did not waive its right to claim the policy was ineffective by allowing Willard to resubmit proper payment. *See e.g., In re First Capital Life Ins. Co.,* 34 Cal.App.4th 1283, 1291, 40 Cal.Rptr.2d 816 (1995); *Silva v. Nat'l Am. Life Ins. Co.,* 58 Cal.App.3d 609, 617–18, 130 Cal.Rptr. 211 (1976). Also, Defendant's improper characterization of Willard's policy as a reinstatement of policy is not dispositive. Defendant informed Willard he did not have a policy to reinstate, but his policy was then effective. *See e.g., Monteleone v. Allstate Ins., Co.,* 51 Cal.App.4th 509, 518, 59 Cal.Rptr.2d 48 (1996) (providing insured with a notice regarding reinstatement does not waive insured's earlier default or insurer's right to rely on expired policy provisions). The policy was not reinstated. Reinstatement rules not requiring disclosure did not apply to Willard, and he was obligated to tell Defendant about his cancer diagnosis.

ed.1996).[7]  Plaintiff contends Willard had no duty because his policy was reinstated, and the insured is not required to provide information absent insurer's inquiry during the reinstatement process.  The Court finds Willard's policy was not reinstated because he never had an effective policy with Defendant.  The law concerning reinstatement relied on by Plaintiff is not applicable.  Willard had a good faith duty to notify Defendant of his September 1998 cancer diagnosis.  Willard knew he had a new illness after he submitted his application, but before Defendant made his policy effective.  This cancer caused his death.  Willard's breach of this duty provides Defendant with a defense to not pay the policy benefits.

D.  *Defendant's Delayed Processing of Willard's Application*

■  Plaintiff brings a breach of contract claim for Defendant's slow processing of his application.  The contract terms do not provide a processing time-frame for Defendant's application.  No breach of an obligation is shown.  Also, Plaintiff has not alleged Willard relied on an assurance of time needed to process his application.

No genuine issues of material fact exist.  Defendant's Motion for Summary Judgment is GRANTED.  Plaintiff's Cross–Motion for Summary Judgment is DENIED.

---

**7.**  Plaintiff misconstrues *Seidler*, 82 Ill.App.3d 361, 37 Ill.Dec. 664, 402 N.E.2d 666 (explaining even though insurer was responsible to ask about plaintiff's health between the application and delivery dates, a policy would be ineffective because insured breached his good faith duty by concealing an illness, which eventually killed him, but was discovered after the application date and before the delivery date), and *Bi–Link Metal v. Louisiana & S. Life Ins. Co.* 96 Ill.App.3d 239, 51 Ill.Dec. 717, 421 N.E.2d 225 (1981) (finding plaintiff was entitled to insurance benefits because his concealed illness was not the cause of death, but explaining plaintiff breached his duty of good faith by not disclosing the illness he developed between the application and delivery dates even though defendant did not ask him).