Susan **PATTERSON**, Plaintiff,

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY; Redlands Community Hospital Voluntary Group Life Insurance Plan, Defendants.**

Case No. EDCV 13–00211 JGB (OPx).

United States District Court,
C.D. California.

Dec. 4, 2013.

Alan E. Kassan, Glenn R. Kantor, Rhonda Harris Buckner, Kantor and Kantor LLP, Northridge, CA, for Plaintiff.

Linda Marie Lawson, James J. Moak, Allison Anne Vana, Meserve Mumper and Hughes LLP, Martin J. Smith, Charles F. Barker, Won Bin Kim, Sheppard Mullin Richter & Hampton LLP, Los Angeles, CA, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

JESUS G. BERNAL, District Judge.

Before the Court is Plaintiff's Motion for Summary Adjudication to Establish Defendant Reliance Standard Life Insurance Company's Liability to Pay Benefits. (Doc. No. 19.) After considering the papers timely filed and the arguments presented at the November 18, 2013 hearing, the Court GRANTS Plaintiff's Motion for Summary Adjudication.

### I. BACKGROUND

#### A. Procedural Background

Plaintiff Susan Patterson filed her Complaint on February 1, 2013 naming Reliance Standard Life Insurance Company ("Reliance Standard") and Redlands Community Hospital Voluntary Group Life Insurance Plan as Defendants. (Doc. No. 1.) On September 30, 2013, the Court approved the parties' stipulation to file the First Amended Complaint ("FAC"). (Doc. Nos. 17, 18.) On October 30, 2013, Reliance Standard and Redlands Hospital filed their respective answers. (Doc. Nos. 30, 31.)

Plaintiff filed her Motion for Summary Adjudication on October 17, 2013. (Doc. No. 19.) In support of her Motion, Plaintiff filed:

- Plaintiff's Statement of Uncontroverted, Material Facts ("Pl. SUF," Doc. No. 19–2);

- Declaration of Glenn R. Kantor ("Kantor Decl.," Doc. No. 20); and

- Declaration of Alan E. Kassan ("Kassan Decl.," Doc. No. 21) attaching Exhibit 1.

On October 28, 2013, Reliance Standard filed its Opposition to Plaintiff's Motion. (Doc. No. 26.) In support of its Opposition, Reliance Standard filed:

- Defendant Reliance Standard's Statement of Genuine Disputes of Material Fact ("Def. SGD," Doc. No. 27);

- Declaration of Peter Sailor ("Sailor Decl.," Doc. No. 28) attaching Exhibits 1–11; and

- Defendant Reliance Standard's Objections to Evidence ("Def. Obj.," Doc. No. 29).

On November 4, 2013, Plaintiff filed her Reply. (Doc. No. 32.)

#### B. First Amended Complaint

In her FAC, Plaintiff alleges that her sister, Cara Dietrich, was employed by

Redlands Community Hospital ("Redlands Hospital"). (FAC, ¶ 6.) As a benefit of her employment, Ms. Dietrich was afforded the opportunity to purchase Voluntary Group Life Insurance. (*Id.*) In 2006, Ms. Dietrich applied for Voluntary Group Life Insurance in the amount of $260,000. (FAC, ¶ 7.) Reliance Standard is the insurer of the benefits under the Life Insurance Plan. (FAC, ¶ 3.) From October 2006 through her death in March 2010, the correct amount of premium payments for her voluntary life insurance coverage were deducted from her paycheck. (FAC, 917.)

Ms. Dietrich passed away in March 2010. (FAC, 918.) Subsequently, Plaintiff submitted a claim for benefits which was denied on February 9, 2011. (*Id.*) Reliance Standard denied Plaintiff's claim because at the time of the application, Reliance Standard had not received proof of Ms. Dietrich's good health. (*Id.*) Plaintiff timely appealed the denial of benefits. (FAC, 919.) On July 22, 2011, Reliance Standard denied the appeal. (*Id.*)

Plaintiff's action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Plaintiff requests relief in the form of payment of life insurance proceeds in the amount of $260,000, disgorgement of profits from Defendant's use of life insurance proceeds rightfully belonging to Plaintiff, attorney's fees and costs, and payment of prejudgment and post-judgment interests allowed under ERISA. (*See* FAC.)

## II. LEGAL STANDARD [1]

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997).

The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. This burden may be satisfied by either (1) presenting evidence to negate an essential element of the non-moving party's case; or (2) showing that the non-moving party has failed to sufficiently establish an essential element to the non-moving party's case. *Id.* at 322–23, 106 S.Ct. 2548. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving party's claim. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989).

1. Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

However, where the moving party bears the burden of proof at trial, the moving party must present compelling evidence in order to obtain summary judgment in its favor. *United States v. One Residential Property at 8110 E. Mohave,* 229 F.Supp.2d 1046, 1047 (S.D.Cal.2002) (citing *Torres Vargas v. Santiago Cummings,* 149 F.3d 29, 35 (1st Cir.1998) ("The party who has the burden of proof on a dispositive issue cannot attain summary judgment unless the evidence that he provides on that issue is conclusive.")). Failure to meet this burden results in denial of the motion and the Court need not consider the non-moving party's evidence. *One Residential Property at 8110 E. Mohave,* 229 F.Supp.2d at 1048.

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party does not meet this burden by showing "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The United States Supreme Court has held that "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. When ruling on a summary judgment motion, the Court must examine all the evidence in the light most favorable to the non-moving party. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The Court cannot engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the jury. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See Schneider v. TRW, Inc.,* 938 F.2d 986, 990–91 (9th Cir. 1991).

## III. DISCUSSION

### A. Evidentiary Objections

■ The majority of Reliance Standard's objections to Plaintiff's evidence are on the grounds that they are irrelevant, speculative, or constitute an improper legal conclusion. (*See* Def. Obj.) "Objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here. *Burch v. Regents of Univ. of California,* 433 F.Supp.2d 1110, 1119 (E.D.Cal. 2006); *see Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 ("Factual disputes that are irrelevant or unnecessary will not be counted."). Thus, the Court does not rule on any of the parties' relevance objections or objections as to improper legal conclusions.

Reliance Standard also objects to some of Plaintiff's facts on the ground that they mischaracterize the evidence. Plaintiff alleges that Ms. Dietrich "exercised her right under the Policy to receive ... Supplemental Life insurance benefits in the amount of $260,000." (Pl. SUF, ¶ 4.) Plaintiff cites to the Group Benefit Enrollment Form that Ms. Dietrich completed for basic and supplemental life insurance coverage in support of that assertion. (Exh. 1 to Kassan Decl., RS0103, RS0147.)[2] Therefore, the evidence sub-

---

**2.** Evidence denoted by the initials "RS" refer    to the numbered pages in the insurance claim

mitted demonstrates that Ms. Dietrich completed the application for Supplemental Life insurance coverage. The dispute is whether merely completing the Group Benefit Enrollment Form is sufficient to demonstrate that Ms. Dietrich exercised her right to receive the supplemental life insurance coverage.

Reliance Standard also objects to the evidence cited in support of Plaintiff's assertion that Ms. Dietrich met all premium obligations from October 2006 to her death in March 2010. (Pl. SUF, ¶ 22.) Reliance Standard objects that Plaintiff mischaracterizes the evidence cited in support of that fact. (Def. Obj., ¶ 22.) The evidence Plaintiff cites in support of her assertion is Reliance Standard's letter to Plaintiff upholding its decision to deny her claim for supplemental life insurance benefits, in which Reliance Standard lists representations Plaintiff made in her appeal request, including her statement that Ms. Dietrich made the premium payments every pay period from October 2006 to her death in March 2010. (Exh. 1 to Kassan Decl., RS0144–0149.)

■ "When evidence is not presented in an admissible form in the context of a motion for summary judgment, *but it may be presented in an admissible form at trial,* a court may still consider that evidence." *Burch v. Regents of Univ. of Cal.,* 433 F.Supp.2d 1110, 1120 (E.D.Cal.2006) (citing *Fraser v. Goodale,* 342 F.3d 1032, 1037 (9th Cir.2003)) (emphasis in original). Here, the Court finds that evidence of Ms. Dietrich's payment of premiums can be introduced in an admissible form at trial. Plaintiff claims that the premium payments were taken from Ms. Dietrich's paychecks every pay period since her October 2006 initial enrollment application through the date of her death in March 2010.

(Exh. 1 to Kassan Decl., RS0146.) Therefore, Ms. Dietrich's payroll record can be presented at trial to demonstrate that she made the premium payments on the supplemental insurance benefits plan. In addition, Reliance Standard does not provide any evidence to demonstrate that Ms. Dietrich did not make premium payments for the supplemental insurance benefits coverage. Therefore, the court overrules Reliance Standard's objection as to Plaintiff's evidence of Ms. Dietrich payment of premiums.

Reliance Standard objects to evidence Plaintiff cites in support of her assertion that "[t]here is no evidence in any of the records produced by Reliance Standard to suggest that Ms. Dietrich was ever asked to provide evidence of insurability at the time of her application, or any time thereafter." (Pl. SUF, ¶ 8.) Reliance Standard also objects to Plaintiff's assertion that she explained to Reliance Standard "that her sister was in excellent health at the time she enrolled for the supplemental insurance ..." (Pl. SUF, ¶ 16.) Since the Court does not rely on these facts to reach its decision, the Court does not rule on Reliance Standard's objection as to the evidence cited in support of these facts.

Finally, Reliance Standard objects to statements in the Declaration of Alan E. Kassan and the Declaration of Glenn R. Kantor on the basis that these statements constitute hearsay. (Def. Obj. at 10–12.) Since the Court does not rely on these statements in reaching its decision, the Court does not rule on Reliance Standard's hearsay objections.

**B. Uncontroverted Facts**

Both sides cite facts that are not relevant to resolution of the Motion. To the extent certain facts are not mentioned in

file, which are submitted by the parties in support of their papers.

this Order, the Court has not relied on them in reaching its decision. The Court finds the following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of this Motion. L.R. 56–3; *see generally* Fed.R.Civ.P. 56.

### 1. The Insurance Policy

In 2003, Reliance Standard issued group policy number GL 134915 (the "Plan" or "Policy") to Redlands Hospital. (Exh. 1 to Sailor Decl., RS0001.) Redland Hospital's Group Benefit Enrollment Form specifies that it provides basic life insurance to all eligible employees. (Exh. 4 to Sailor Decl., RS0103.) In addition, supplemental life insurance is available to "all eligible employees on a voluntary basis, through after tax payroll deductions." (*Id.*) The Policy specifies a waiting period of 90 days of continuous employment for employees in the eligible class. (Exh. 1 to Kassan Decl., RS0009.)

The Plan provides:

> If an eligible person pays a part of the premium, he/she must apply in writing for the insurance to go into effect. He/she will become insured on the date stated on the Schedule of Benefits, except that the insurance will go into effect: (1) on the date he/she applies, if he/she applies within thirty-one (31) days of the date he/she is first eligible; or (2) on the date we approve any required proof of good health. We require proof of good health if a person applies: (a) after thirty-one (31) days from the date he/she first becomes eligible …

(Exh. 1 to Sailor Decl., RS0015.) The policy states that it is "delivered in Califor-

nia and is governed by its laws." (Exh. 1 to Kassan Decl., RS0001.)

The Plan contains an incontestability clause which states, in part:

> Any statement made in your application will be deemed a representation, not a warranty. We cannot contest this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium.

(*Id.* at RS0013.)

### 2. Ms. Dietrich's Employment

Ms. Dietrich commenced her employment with Redlands Hospital on June 12, 2006. (Exh. 1 to Kassan Decl., RS0147.) Through her employment, Ms. Dietrich was eligible to apply for life insurance coverage under the Policy. (Exh. 1 to Kassan Decl., RS0147; Sailor Decl., ¶ 6.) On October 30, 2006, Ms. Dietrich completed the Group Benefit Enrollment Form for basic and supplemental life insurance coverage. (Exh. 1 to Kassan Decl., RS0103, RS0104.) Ms. Dietrich completed the application for Supplemental Life insurance coverage in the amount of $260,000. (*Id.* at RS0103, RS0104, RS0147.) The Group Benefit Enrollment Form identified Plaintiff as the beneficiary of the Plan.[3] (*Id.*) Ms. Dietrich did not submit any evidence of insurability or proof of good health with the Group Benefit Enrollment Form in support of the application for supplemental life insurance coverage. (*Id.* at RS0139.) Even though the Plan specified that proof of good health is required if a person applies after the 31 days from the date he/she first becomes eligible, neither Defendant explicitly requested that Ms. Dietrich provide evidence of insurability. (*See* Exh. 1 to Kassan Decl.)

---

**3.** Plaintiff is also the administrator of Ms. Dietrich's trust, which provides for Ms. Diet-

rich's two children. (Exh. 1 to Kassan Decl., RS0173, RS0102.)

### 3. Insurance Claim

Ms. Dietrich died on March 28, 2010 from issues and complications related to Acute Lymphoblastic Leukemia. (Exh. 1 to Kassan Decl., RS0105.) On October 27, 2010, Reliance Standard requested information from Redlands Hospital about Ms. Dietrich. (Sailor Decl., ¶ 12; Exh. 3 to Sailor Decl., RS0159–0160.) On December 9, 2010, Redlands Hospital provided a copy of Ms. Dietrich's Group Benefit Enrollment Form to reliance Standard. (Sailor Decl., ¶ 13; Exh. 4 to Sailor Decl., RS0093, RS0103.)

On December 16, 2010, Reliance Standard emailed Redlands Hospital noting that Ms. Dietrich became eligible to apply for coverage under the Plan on September 10, 2006. (Exh. 3 to Sailor Decl., RS0153.) Reliance Standard advised Redlands Hospital that there was no documentation showing that Ms. Dietrich provided written proof of good health to obtain supplemental coverage. (*Id.* at RS0154.) Reliance Standard asked Redlands Hospital to provide any information it might have to support supplemental life insurance coverage, explaining that otherwise only basic life insurance coverage was in force. (*Id.* at RS0155.)

Following Ms. Dietrich's death, Plaintiff, as the beneficiary of the life insurance benefits, filed a claim for both basic life insurance benefits and supplemental life insurance benefits. (Exh. 1 to Kassan Decl., RS0056, RS0057.) Upon receipt of proof of claim, Reliance Standard paid Plaintiff $97,810.39, representing the $95,000 basic life insurance benefit plus interest. (Exh. 9 to Sailor Decl., RS0045.) On February 9, 2011, Reliance Standard denied the $260,000 supplemental benefit stating that "Ms. Dietrich did not satisfy the policy requirements in order to obtain the supplemental life insurance coverage" because she failed to submit proof of her good health. (Exh. 1 to Kassan Decl., RS0164–0167.) Reliance Standard asked Redlands Hospital to confirm the premiums it paid on Ms. Dietrich's behalf for supplemental coverage, stating that it would issue a refund of that amount. (Exh. 7 to Sailor Decl., RS0166.) Reliance Standard also asked that Redlands Hospital refund to Plaintiff any premium Ms. Dietrich paid via payroll deduction for such coverage. (*Id.*)

On May 18, 2011, Plaintiff appealed Reliance Standard's denial of her claim for supplemental life insurance benefits. (Exh. 1 to Kassan Decl., RS0173–0175.) On July 22, 2011, Reliance Standard upheld its denial of Plaintiff's claim based on the finding that since Ms. Dietrich failed to submit proof of good health, her coverage never went into effect. (*Id.* at RS0144–0149.)

### C. Standard of Review

■ "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). "If the plan gives the administrator or fiduciary discretionary authority, [the court] review[s] the denial of benefits for abuse of discretion." *Burrey v. Pac. Gas and Elec. Co.,* 159 F.3d 388, 391 (9th Cir. 1998) (internal citation omitted). "[F]or a plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir.2006) (en banc) (internal citation omitted).

Here, the parties do not dispute that the Plan confers discretion on Reliance Standard. The Plan provides:

> [Reliance Standard] shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(Exh. 1 to Sailor Decl., RS0023.) The grant of discretionary authority would, normally, require an abuse of discretion review.

However, the issue before the Court on this Motion for Summary Judgment is whether the incontestability clause bars Reliance Standard from denying payment of life insurance benefits. Since this is a question of law, the Court applies a de novo review and the summary judgment standard applies. *See Burrey*, 159 F.3d at 392 (applying de novo review where there is a question of law); *Tremain v. Bell Industries, Inc.*, 196 F.3d 970, 977–78 (9th Cir.1999) (where the plaintiff sued under ERISA and the court determined that there was a conflict of interests warranting a de novo review and decided the case by summary judgment).

### D. Incontestability Provision

■ The gravamen of Plaintiff's Motion is that the incontestability clause in the Plan precludes Reliance Standard from denying payment of the supplemental life insurance benefits. Reliance Standard responds that the incontestability clause does not bar the denial of supplemental benefits since the supplemental life insurance coverage never went into effect.

■■ "A condition precedent refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties." *American Way Cellular, Inc. v. Travelers Property Casualty Co. of Am.*, 216 Cal.App.4th 1040, 1054, 157 Cal.Rptr.3d 385 (2013) (internal citations and quotations omitted). "In general, conditions neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy." *Id.* (internal citations and quotations omitted). "Good health provisions are enforceable conditions precedent." *Willard v. Valley Forge Life Ins. Co.*, 218 F.Supp.2d 1197, 1201 (C.D.Cal.2002) (finding that a good health provision in a life insurance policy, which required a prospective insured's health condition remain the same between application and policy delivery dates, to be an enforceable condition precedent to coverage under California law).

Based on the language of the Plan, the required proof of good health qualifies as a condition precedent. The Plan provides that supplemental life insurance will go into effect on the date an individual applies, if within 31 days of becoming eligible. (Exh. 1 to Sailor Decl., RS0015.) The Plan contains a 90–day waiting period of continuous employment for employees in the eligible class. (Exh. 1 to Kassan Decl., RS0009.) The Plan explicitly states that the individual effective date is the date immediately following completion of the waiting period. (*Id.*) If an individual applies after the expiration of the 31 days, the Policy will go into effect on the date Reliance Standard approves any required proof of good health. (Exh. 1 to Sailor Decl., RS0015.)

Here, Ms. Dietrich commenced her employment with Redlands Hospital on June 12, 2006. (Exh. 1 to Kassan Decl., RS0147.) The Plan's 90–day waiting peri-

od ended on September 10, 2006. (*See* Exh. 1 to Sailor Decl., RS0009.) Ms. Dietrich applied for supplemental life insurance coverage on October 30, 2006, more than 31 days after September 10, 2006. (Exh. 1 to Kassan Decl., RS0103, RS0104.) Therefore, Ms. Dietrich was required to submit proof of good health. (Exh. 1 to Sailor Decl., RS0015.) Pursuant to the plain language of the Plan, the Policy would only go into effect on the date Reliance Standard approves the required proof of good health. (*Id.*) There is no dispute here that Ms. Dietrich never submitted proof of good health. (Exh. 1 to Kassan Decl., RS0139.) Based on these facts, Ms. Dietrich did not fulfill a condition precedent required by the Plan.

In *Amex Life Assurance Co. v. Super. Ct.*, 14 Cal.4th 1231, 60 Cal.Rptr.2d 898, 930 P.2d 1264 (1997), the plaintiff brought an action against Amex Life Assurance Company ("Amex"), the life insurance company that denied his claim. *Amex*, 14 Cal.4th at 1234–35, 60 Cal.Rptr.2d 898, 930 P.2d 1264. The plan contained an incontestability clause that barred any contest after the policy has been in force for two years. *Id.* at 1233, 60 Cal.Rptr.2d 898, 930 P.2d 1264. The insured knew that he was HIV positive when he applied for life insurance but lied on his application for insurance and sent an imposter to take the mandatory medical examination. *Id.* at 1234, 60 Cal.Rptr.2d 898, 930 P.2d 1264. Amex collected premiums for more than two years until the insured died. *Id.* Thereafter, Amex discovered the fraud after the beneficiary filed a claim, and it denied the claim. *Id.*

Amex argued that it can contest the existence of the contract because the medical examination was a condition precedent to its formation. *Id.* at 1245, 60 Cal. Rptr.2d 898, 930 P.2d 1264. The court held that Amex's defense that the insured

was not in good health at the time of the delivery of the policy was "within the scope of the [incontestability] clause which makes the policy incontestable after one year from its date if all due premiums shall have been paid, without by its terms excluding any ground of defense." *Id.* at 1245–46, 60 Cal.Rptr.2d 898, 930 P.2d 1264. The Court noted that "the incontestability clause protects the insured against any defense of a breach of a condition precedent where he has paid premiums beyond the period of contestability." *Id.* at 1246, 60 Cal.Rptr.2d 898, 930 P.2d 1264 (internal citations and quotations omitted).

■ Here, the Plan contains an incontestability clause which states, in part:

Any statement made in your application will be deemed a representation, not a warranty. We cannot contest this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium.

(Exh. 1 to Kassan Decl., RS0013.) Ms. Dietrich completed the Group Benefit Enrollment Form for basic and supplemental life insurance coverage on October 30, 2006. (*Id.* at RS0103–0104.) Plaintiff claims that Ms. Dietrich made all premium payments from October 2006 to her death in March 2010. (*Id.* at RS0146–0147.) While Reliance Standard objects to Plaintiff's claim and evidence cited in its support, Reliance Standard does not offer any evidence to show that Ms. Dietrich did not make the premium payments. (Def. SGD, ¶ 22.) On the contrary, Reliance Standard admits that upon denial of Plaintiff's claim for supplemental life insurance benefits, it advised Redlands Hospital to confirm the premiums remitted on Ms. Dietrich's behalf for supplemental coverage so that any applicable refund could be issued. (*Id.*, Exh. 11 to Sailor Decl., RS0147.) Reliance Standard does not deny that it collected

premiums for more than three years until Ms. Dietrich died. Accordingly, Plaintiff's claim that Ms. Dietrich made all the premium payments between October 2006 and March 2010 is uncontroverted.

Based on the standard set forth in *Amex*, Reliance Standard's claim that Ms. Dietrich failed to provide proof of good health qualifies as a defense of a breach of a condition precedent that falls within the scope of the incontestability clause. Since the contestability period expired and Ms. Dietrich fulfilled her obligation to pay the required premium payments, the incontestability clause applies in this case and bars Reliance Standard from contesting the Policy. As the court in *Amex* stated, "[t]o hold otherwise would be to permit such a clause in its unqualified form to remain in a policy as a deceptive inducement to the insured." *Amex*, 14 Cal.4th at 1246, 60 Cal.Rptr.2d 898, 930 P.2d 1264.

The Court's decision comports with the public policy considerations behind incorporating the incontestability clause in life insurance policies. The purpose of the incontestability clause is to give "the insured a guaranty against possible expensive litigation to defeat his claim after the lapse of many years, and at the same time gives the company time and opportunity for investigation, to ascertain whether the contract should be in force." *Amex*, 14 Cal.4th at 1238, 60 Cal.Rptr.2d 898, 930 P.2d 1264 (internal citations and quotations omitted). "The need for such protection becomes especially clear for life insurance policies, where the contest is usually made after the named insured has died, robbing the beneficiaries of their most potent witness." *Id.* (internal quotations omitted).

Here, Reliance Standard had more than three years to investigate whether the Policy should be in force as to Ms. Dietrich. Reliance Standard did not conduct any such investigation and only investigated the eligibility of Ms. Dietrich for supplemental life insurance coverage after her death. (*See* Exh. 3 to Sailor Decl., RS0153–0155.) Therefore, the need for the protection afforded by the incontestability clause is highest here, where Ms. Dietrich fulfilled her obligation to pay the insurance premiums for more than three years, the beneficiary's most potent witness is deceased, and Reliance Standard had ample opportunity to conduct an investigation.

Reliance Standard argues that the incontestability provision is inapplicable because there is no "contest" within the meaning of the provision. (Opp. at 16–17.) First, Reliance Standard contends that it is not contesting the validity of the underlying Group Plan. Second, Reliance Standard contends that it is not contesting Ms. Dietrich's supplemental coverage within the meaning of the incontestability clause because it did not deny liability by reason of fraud or misrepresentation. However, as the court in *Amex* held, the incontestability clause applies to a contest based on breach of a condition precedent. *Amex*, 14 Cal.4th at 1246, 60 Cal.Rptr.2d 898, 930 P.2d 1264. Accordingly, Reliance Standard's argument that its denial of benefits is not a "contest" within the meaning of the incontestability clause fails.

For the reasons set forth above, the Court finds that the incontestability clause precludes Reliance Standard from denying Plaintiff's claim for supplemental life insurance benefits.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's Motion for Summary Adjudication.